Joseph W. BAKER, Plaintiff-Appellant,

v.

OTIS ELEVATOR COMPANY, U.T.I. Products, Inc., Local 490, International Union of Electrical, Radio and Machine Workers, A.F.L.–C.I.O., United Technologies Corporation, Bankers Trust Company, and Citibank N. A., Defendants-Appellees.

No. 79–1185.

United States Court of Appeals,
Third Circuit.

Argued Oct. 15, 1979.

Decided Nov. 13, 1979.

Joseph W. Baker, Karcher, Reavey & Karcher, P. A., Sayreville, N. J., for plaintiff-appellant.

S. Joseph Fortunato, Warren J. Casey, Pitney, Hardin & Kipp, Morristown, N. J., for defendants-appellees.

Before SEITZ, Chief Judge, and GARTH and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

GARTH, Circuit Judge.

This appeal requires us to decide whether § 206(a) of the Employee Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1056(a) (1976), extends its coverage to an employee who voluntarily left work before that provision of ERISA became effective. We conclude, as did the district court, that it does not. We therefore affirm the district court's order granting summary judgment to the defendants.[1]

---

1. No issue is raised as to any dispute of material fact. The defendants named by Baker include Baker's former employer, Otis; the former and present trustees of the pension plan, Bankers Trust and Citibank, N.A., respectively; Local 490, International Union of Electrical, Radio and Machine Workers, A.F.L.–C.I.O., with whom Otis had a collective bargaining

## I.

Joseph Baker, Sr. was employed by the Otis Elevator Company from 1943 to 1970. In 1970, when he was 50 years old, Baker voluntarily left Otis to accept other employment. At the time of his departure from Otis, a pension plan instituted for the benefit of certain hourly-paid employees included Baker within its coverage. The plan provided both regular retirement benefits and early retirement benefits. Regular benefits were afforded to those who worked at Otis for ten years and who reached age 35 before leaving employment. These benefits, however, would begin and be paid only when the employee reached age 65. Early benefits were available to employees who had completed fifteen years of service, and who then left Otis after reaching age 55.[2] Such benefits would begin immediately upon retirement.

Sometime about 1975, some five years after Baker had left Otis, Otis experienced a sharp drop in demand for elevator equipment due to a decline in new construction. As a result, Otis experienced large scale layoffs during 1976 and 1977. Otis and Baker's Union entered into a series of agreements designed to cushion the impact of the layoffs on the affected workers. One feature of these agreements expanded the availability of early retirement benefits. The first such agreement provided early benefits to employees *laid off* (as distinct from voluntary departures) between March 1 and July 1, 1976, with fifteen years of service, who were between 54 and 55 years old at the time of layoff. The second agreement consisted of an oral extension of the first agreement to cover those employees *laid off* between July 1, 1976 and March 31, 1977. The third agreement was included in a new collective bargaining contract entered into by Otis and the Union, which went into effect April 1, 1977. This last agreement provided early benefits to all employees with fifteen years of service who were *laid off* prior to their 55th birthday.

In 1971, shortly after Baker left the company, Otis advised him by letter that he was entitled only to regular retirement benefits, which would not commence until 1985, after his 65th birthday.[3] In July, 1976, when Baker was 56, he wrote Otis seeking "early" retirement benefits. Otis denied his request and restated its original position, that he was entitled only to regular retirement benefits, which would commence in 1985. Baker then filed this action in which he seeks payments now for early retirement.

After a complicated procedural history in the district court, which need not be recited here, summary judgment was granted to the defendants and against Baker on all of Baker's claims. This appeal followed.

## II.

Baker's sole substantial claim[4] rests on § 206(a) of ERISA, 29 U.S.C. § 1056(a) (1976) (hereinafter § 206(a)). In relevant part, this section provides:

> In the case of a plan which provides for the payment of an early retirement benefit, such plan shall provide that a participant who satisfied the service requirements for such early retirement benefit, but separate[d][5] from the service (with

---

agreement; and United Technologies, Otis's parent company. For ease in reference, we will refer to the defendants collectively as Otis.

2. The early retirement provision of the pension plan read as follows:

 (2) Early Retirement
 A Covered Employee who has completed 15 years of Credited Service may, upon 30 days' advance notice to the Company on the proper form provided by the Company, retire on the first day of any month following his 55th birthday, and shall be entitled to a monthly pension under this Plan as provided in Section IV, Subsection (2), provided that if he is eligible for

and does not elect a pension under Subsection (3) of this Section III, such Early Retirement Pension shall not commence prior to the expiration of his recall rights, unless he has waived his recall rights.

3. Baker's birth date was June 24, 1920.

4. On this appeal, Baker has also asserted numerous other claims for relief. We briefly discuss and dispose of these in part III, *infra*.

5. The word "separated" appears as "separate" in the United States Code compilation, 29 U.S.C. § 1056(a) (1976). It appears as "sepa-

any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially reduced under regulations prescribed by the Secretary of the Treasury.

On its face, this provision, if applicable, would plainly support Baker's claim: he is a participant who is now 55 years old, who satisfied the service requirement for early benefits (15 years), but separated from the service before satisfying the 55 year age requirement. The statute requires that a former employee in Baker's position be given early benefits once he reaches the retirement age specified, and, as we have previously observed, Baker has reached age 55. But the question we then must resolve is whether this section of the statute applies to an employee, like Baker, who left work prior to the date on which this section became effective.

### A.

To assist us in answering this question, we have had our attention called to an administrative regulation which bears on the very issue presented here, and which, if deemed controlling, would oblige us to deny relief to Baker. In order to understand the relevance of this regulation, however, we must first briefly review the structure of ERISA.

As enacted, ERISA consisted of four titles, two of which have no bearing on the issue in this case. Referring then to the two titles relevant here, we find that Title I contains provisions for the protection of employee benefit rights. These provisions are codified in Title 29 of the United States Code. Title II contains amendments to the Internal Revenue Code regarding taxation of pension plans, which are codified in Title 26 of the U.S. Code. These tax provisions

of Title II embody requirements for pension plans that must be satisfied to make the plan eligible for certain favorable tax treatment, an essential feature of the legislation. The tax terms in Title II are closely analogous to, and almost identical to, the employee benefit provisions for pension plans set forth in Title I. Thus, § 206(a) of Title I, on which Baker rests his claim, has a substantively correspondent tax analogue in § 1021(d) of Title II. Section 1021(d) has been codified in the U.S. Code as 26 U.S.C. § 401(a)(14) (1976), and provides in part:

In the case of a plan which provides for the payment of an early retirement benefit, a trust forming a part of such plan shall not constitute a qualified trust under this section unless a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially, reduced under regulations prescribed by the Secretary.

To demonstrate the coincidence between the two sections, and the identical language utilized to effectuate the legislative purpose, we reproduce below a combination of the relevant portions of § 206(a) of Title I and § 1021(d) of Title II, bracketing that segment of § 1021(d) which does not appear in § 206(a) and underlining those segments of § 206(a) which do not appear in § 1021(d). This exercise is virtually conclusive proof that the two sections were intended to be the same for all practical purposes and should be so construed:

In the case of a plan which provides for the payment of an early retirement benefit, [a trust forming a part of such plan shall not constitute a qualified trust under this section unless] *such plan shall*

---

rated" in the official publication of the statute, Employee Retirement Income Security Act of 1974, Pub.L.No.93–406, § 206(a), 88 Stat. 864

(1976), and it is clear from the context that the past tense is intended.

*provide that* a participant who satisfied the service requirements for such early retirement benefit, but separated from the service (with any nonforfeitable right to an accrued benefit) before satisfying the age requirement for such early retirement benefit, is entitled upon satisfaction of such age requirement to receive a benefit not less than the benefit to which he would be entitled at the normal retirement age, actuarially, reduced under regulations prescribed by the Secretary *of the Treasury.*

We stress the identity of Title I and Title II because Congress specifically delegated to the Treasury Department, rather than to the Labor Department, authority to issue regulations concerning participation, vesting and funding standards. Congress further provided that the regulations issued by Treasury would apply as well to the analogous employee benefit sections of Title I in these areas.[6] Moreover, Congress required that any violation of Title I must be referred by the Secretary of Labor to the Treasury Department.[7] It is therefore not surprising that the relevant sections of Titles I and II were drawn in identical fashion to require uniform results in their interpretation.

In light of this clear delegation to the Treasury Department of rule making power respecting participation standards, and Congress's clear directive that Treasury regulations shall govern the employee benefit provisions as well as the tax provisions of ERISA, we conclude that our analysis must begin with the Treasury Department regulations relevant to the issue presented by Baker. And, indeed, the Treasury Department has addressed this very question.

### B.

The Treasury Department, in a regulation promulgated under § 206(a)'s tax analogue, § 1021(d) of Title II, has ruled that § 1021(d), and hence § 206(a), does *not* include or cover participants who retired before the date on which both sections became effective. The regulation, 26 C.F.R. § 1.401(a)–14(c)(3) (1978), which is unequivocal in this respect, reads:

(3) *Separation prior to effective date of this section.* The provisions of this paragraph shall not apply in the case of a plan participant who separates from service before attainment of early retirement age and *prior to the effective date of this section* set forth in paragraph (e) of this section.

**6.** 29 U.S.C. § 1202(c) (1976) provides:

(c) Regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter [which include § 206(a)]. Except as otherwise expressly provided in this Act, the Secretary of Labor shall not prescribe other regulations under such parts, or apply the regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, 412 of Title 26 and applicable to the minimum participation, vesting, and funding standards under such parts in a manner inconsistent with the way such regulations apply under sections 410(a), 411, and 412 of Title 26.

**7.** 29 U.S.C. § 1202(a) (1976) provides in part: Except as otherwise provided in this Act, the Secretary of Labor shall not generally apply part 2 of subchapter I of this chapter [which

includes § 206(a)] to any plan or trust subject to sections 410(a) and 411 of Title 26, but shall refer alleged general violations of the vesting or participation standards to the Secretary of the Treasury. (The preceding sentence shall not apply to matters relating to individuals benefits.)

Section 1202 refers to participation and vesting regulations issued by Secretary of the Treasury under §§ 410(a), 411 and 412 of the Internal Revenue Code. The codification of § 1021(d) of Title II, § 206(a)'s tax analogue, does *not* appear in one of these three Code sections, but rather appears in § 401(a)(14) of the Code. The early benefit rule of § 401(a)(14), however, is clearly as much a participation standard as are the provisions of § 410(a), and we construe the Treasury Department's regulatory authority to embrace the early benefit provision. Inasmuch as there is no express or implied delegation to the Labor Department of rule making power on early benefits, we find no reason to leave this single aspect of participation standards outside the Treasury Secretary's domain.

26 C.F.R. § 1.401(a)–14(c)(3) (1978) (emphasis added). This section of the regulation became applicable to Otis's plan no earlier than December 31, 1975, some years after Baker had left the company.[8]

Thus, if the regulation, 26 C.F.R. § 1.401(a)–14(c)(3) (1978), which, as we have held, pertains to § 206(a) of Title I as well as to § 1021(d) of Title II, withstands attack and is to be sustained, Baker's claim for relief predicated on a retroactive application of § 206(a) must fail. We turn to a consideration of that issue.

### C.

■ There can be no question but that the regulation with which we are here concerned is a legislative regulation which was issued pursuant to a clear delegation of rule making authority, see 29 U.S.C. § 1202(c) (1976). As Professor Davis has explained,

A legislative rule is the product of an exercise of delegated legislative power to make law through rules. An interpretative rule is any rule an agency issues without exercising delegated legislative power to make law through rules.

The distinction between the two kinds of rules is fundamental. . . . Valid legislative rules have about the same effect as valid statutes; they are binding on courts. . . .

[By contrast, however,] [c]ourts always have power to substitute their judgment for administrative judgment as to the content of interpretative rules, but they refrain in varying degrees from substituting judgment in various circumstances . . . . .

2 K.C. Davis, Administrative Law Treatise, § 7:8 at 36–37 (1979). We recognize the distinction in the nature of the two types of rules, leading in turn to a distinction in our standard of review. Our scope of review of legislative rules is far more restricted than the scope of our review of interpretative rules. See id. at 37.

In its recent opinion in *Batterton v. Francis*, 432 U.S. 416, 97 S.Ct. 2399, 53 L.Ed.2d 448 (1977), the Supreme Court described the scope of review to be applied to a *legislative* regulation, which in that case defined unemployment, and which had been issued by the Secretary of Health, Education and Welfare:

Ordinarily, administrative interpretations of statutory terms are given important but not controlling significance. This was the Court's approach, for example, when it had under consideration the question whether the term "wages" in Title II of the Social Security Act included a backpay award.

Unlike the statutory term in Title II, however, Congress in § 407(a) expressly *delegated* to the Secretary the power to prescribe standards for determining what constitutes "unemployment" for purposes of AFDC–UF eligibility. In a situation of this kind, Congress entrusts to the Secretary, rather than to the courts, the primary responsibility for interpreting the statutory term. In exercising that responsibility, the Secretary adopts regulations with legislative effect. A reviewing court is not free to set aside those regulations simply because it would have interpreted the statute in a different manner.

The regulation at issue in this case is therefore entitled to more than mere deference or weight. It can be set aside only if the Secretary exceeded his statutory authority or if the regulation is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."

432 U.S. at 424–26, 97 S.Ct. at 2405–2406 (footnotes and citations omitted; emphasis in original). The Court also stated that a

---

**8.** Subsection (e) of the regulation provides that the "section shall apply to a plan for those plan years to which section 411 of the [Internal Revenue] Code applies without regard to section 411(e)(2)." 26 C.F.R. § 1.401(a)–14(e) (1978). Section 411 provides that it applies to plan years beginning after December 31, 1975, if the plan, as in this case, was in existence on January 1, 1974. See 26 U.S.C. § 411 note, Effective Date (1976). Section 411 also contains a variety of exceptions that in certain circumstances serve to postpone, but which never advance, the effective date.

*legislative* regulation could be set aside only if it bore no relationship to the governing statutory section or tended to defeat the purpose of the statutory scheme. *See id.* at 428, 97 S.Ct. 2399. In a footnote, the Court contrasted, as we have here, review of legislative rules with review of interpretative rules:

> Legislative, or substantive, regulations are "issued by an agency pursuant to statutory authority and . . . implement the statute, as, for example, the proxy rules issued by the Securities and Exchange Commission . . . . Such rules have the force and effect of law."
>
> By way of contrast, a court is not required to give effect to an interpretative regulation. Varying degrees of deference are accorded to administrative interpretations, based on such factors as the timing and consistency of the agency's position, and the nature of its expertise.

432 U.S. at 425 n.9, 97 S.Ct. at 2405–2406 n.9 (citations omitted).

 Thus, to sustain the Treasury Department regulation at issue here, we need only determine, as we do, that its promulgation is not an abuse of discretion, that it is neither arbitrary or capricious, nor contrary to the governing statutory section and ERISA as a whole. We have been shown nothing which would indicate that, pursuant to this standard, 26 C.F.R. § 1.401(a)–14 (1978) should be set aside. To the contrary, that regulation, and particularly subsection (c)(3), carry forward the policy of prospectiveness which this court acknowledged in its recent decision discussing another aspect of ERISA. In *Reuther v. Trustees of the Trucking Employees of Passaic and Bergen County Welfare Fund,* 575 F.2d 1074 (3d Cir. 1978), we examined a different section of ERISA, 29 U.S.C. § 1103(c)(2)(A) (1976), which provides that employer contributions mistakenly made to a pension fund may be returned, but only within one year from the date of such payment. We there considered whether the one year time limit should be applied to contributions made *before* the effective date of ERISA. We held that ERISA should be given only *prospective* effect, and that the one year time limit therefore did not apply:

> We find even more formidable support for [the employer's] case when we examine the entire statutory schema for an understanding of Congress' intention as to acts, omissions or circumstances which arose prior to ERISA's effective date. ERISA's supersedure provision declares that the Act "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan . . . ," 29 U.S.C. § 1144(a), but it immediately qualifies this proposition with a provision that we believe is most persuasive, if not absolutely controlling, in our quest for congressional intention: "This section shall not apply with respect to any cause of action which arose, or any act or omission which occurred, before January 1, 1975." 29 U.S.C. § 1144(b)(1). This language compels the inference that acts or omissions that occurred prior to the effective date of ERISA are not controlled by the provisions of the Act.
>
> Any doubt as to this reading has been totally dissipated by a recent pronouncement of the Supreme Court in a case involving pre-ERISA activities in a pension plan similar to the one before us: "Because ERISA did not become effective until January 1, 1975, and *expressly disclaims any effect with regard to events before that date,* it does not apply to the facts of this case." *E. I. Malone v. White Motor Corp.,* 435 U.S. 497, 499 n.1, 98 S.Ct. 1185, 1187 n.1, 55 L.Ed.2d 443 (1978) (emphasis added).

575 F.2d at 1077–78 (footnote omitted).

While we recognize that the legislative history [9] preceding ERISA's enactment is of

---

**9.** Perhaps the only pertinent legislative discussion was that between Senators Nelson and Jackson:

> Mr. Nelson. Is the Senator talking about someone who worked for 30 years and is laid off before this bill becomes law?

> Mr. Jackson. That is correct. There are tens of thousands of them, and the employer was able to deduct the cost of covering them in the program as part of his pension plan; that is, he is able to deduct that amount from his overall taxable income.

little assistance to us in reaching our determination, we are satisfied in light of our own analysis and that of *Reuther* (leading to the holding that ERISA should be applied only prospectively), that the Treasury Regulation mandating only prospective effect for § 206(a) is completely consistent with the governing statute and is neither arbitrary nor capricious, and must therefore be accorded "the force and effect of law," *Batterton v. Francis*, 432 U.S. at 425 n.9, 97 S.Ct. at 2405, n.9.

Baker, however, does not agree that the regulation is consistent with § 206(a). Nor does he agree that the language of § 206(a) compels only prospective application. He relies on one segment of our *Reuther* decision, in which the court engaged in a grammatical analysis involving the use of tenses:

> The trustees' case stands or falls on the interpretation of one clause in the comprehensive statute: "a contribution which *is* made by an employer [may be returned] to the employer within one year after the payment of the contribution." (Emphasis added). The provision went into effect January 1, 1975.

> The trustees would have us expand the congressionally expressed present tense of the copulative verb, "is", to the past tense, "was", or the present perfect tense, "has been", in order to encompass contributions made prior to the effective date of the Act. We believe that the plain meaning of the statutory language militates against this broad interpretation. . . . Simply put, the use of the present tense "is" indicates that this provision is to apply only to contributions made *after* the effective date of ERISA; if Congress had intended otherwise, it

could have stated "In the case of a contribution that is, was, or has been made by an employer".

575 F.2d at 1077.

Although that analysis concerned a different section of ERISA, Baker has sought to extend the discussion and reasoning expressed there to the present context of this case and to § 206(a). Baker claims that since § 206(a) employs the past tense ("a participant who *satisfied* the service requirements . . . but *separated* from the service . . ."), *Reuther* would require that § 206(a) be applied retroactively rather than prospectively.

■ This argument need not detain us long, for it fails in every respect. Baker reads *Reuther* far too technically. *Reuther* stands broadly for the proposition that ERISA should be applied prospectively. It is not authority for a narrow view that the present tense requires prospectivity and the past tense, retroactivity. Although, as we have pointed out, the *Reuther* court acknowledged the argument as to the effect of tenses in the interpretation of the statute, it can hardly be contended that *Reuther's* holding was confined to, or wholly dependent upon, that analysis. As Judge Aldisert, writing in *Reuther*, stated, "we heed [the] admonition 'not to make a fortress out of the dictionary,' *Cabell v. Markham*, 148 F.2d 737, 739 (2d Cir. 1945)." Moreover, that discussion did no more than explain or perhaps amplify the court's primary grounds for holding ERISA to be prospective. *Reuther* found "even more formidable support," 575 F.2d at 1077, for Congress's prospective intention in the entire statutory scheme, and in particular in 29 U.S.C. § 1144 (1976), which expresses the

---

Mr. Nelson. I think I am correct in saying no, he is not covered. The provisions of the bill do not go back and give rights to people prior to the applicable provisions of the law.

Mr. Jackson. In other words, anyone who is laid off and is no longer employed prior to the time this bill becomes effective; anyone prior to that is stuck. Am I right or wrong?

Mr. Nelson. This bill does not retroactively convey rights to people who have been laid

off from plants that closed prior to the effective date of the law.

2 Legislative History of the Employee Retirement Income Security Act of 1974, at 1808–09 (1976).

This discussion, while certainly not determinative of the issue before us, nevertheless inclines towards and supports our conclusion that ERISA should be applied prospectively.

same prospective thrust of ERISA as is expressed in 26 C.F.R. § 1.401(a)–14(c)(3) (1978). Finally, *Reuther* relied on *Malone v. White Motor Corp.*, 435 U.S. 497, 98 S.Ct. 1185, 55 L.Ed.2d 443 (1978), to confirm its conclusion of prospectivity. Thus, we are satisfied that the same prospective result would have been reached in *Reuther* regardless of the discussion of tense presented there. Furthermore, Baker in any event misreads § 206(a): the past tense there, as the language makes clear, refers not to the time before the statute went into effect, but rather to the time before the participant reached the early retirement age set forth in the pension plan.

Thus, we adhere to the conclusion we have reached that the regulation must be upheld.

## III.

Baker advances several other arguments that we find to be without merit. He maintains that he is entitled to early retirement benefits under the original pension plan. This claim must fail in light of the plain provision of the plan that early benefits are available only to those who retire after reaching 55. Baker left Otis's employ at age 50.[10]

Baker next attacks the modifications made to the original pension plan. While he does not contend, nor could he, that these modifications confer any benefits on him,[11] he maintains that they were precluded by the pension agreements of 1970 and 1974 and that their adoption constituted a breach of fiduciary duty. We disagree on both counts. Any provision in the pension agreements prohibiting modification of the pension plan was simply overridden by the consensual modifications entered into by Otis and the Union. Moreover, we fail to understand how a modification of the plan which confers added benefits on victims of a massive layoff program, but withholds such benefits from voluntary retirees who left employment years earlier, can be said to violate any fiduciary duty.

Finally, we observe that even if the concerned parties failed to amend the plan to incorporate the provisions of the 1976 and 1977 agreements into the plan instrument, so that technically the payments made under the special agreements were not made "in accordance with the documents and instruments governing the plan," in violation of 29 U.S.C. § 1104(a)(1)(D), Baker's position would hardly improve: his rights would continue to be governed by the original plan, and that plan, as we have previously noted, clearly denies him early benefits.

## IV.

Having concluded that § 206(a) must be given prospective effect only, and that Baker is entitled to no relief under ERISA or under the terms of Otis's original pension plan or the modifications thereto, we will affirm the order of the district court granting summary judgment in favor of the defendants[12] and against Baker.

---

10. *See* note 2 *supra.*

11. The agreements extended the early retirement benefits to employees who were laid off, not to those who, like Baker, voluntarily left.

12. Another issue briefed on this appeal involved the doctrine of *res judicata.* This issue was raised by Otis in resisting Baker's claim. Otis urged that a prior decision of the district court, which awarded summary judgment to Otis on the § 206(a) claim, should be given *res judicata* effect as a result of Baker's failure to appeal from that order, which had been certified as final under F.R.Civ.P. 54(b). Thus, Otis contends on this appeal that the doctrine of *res judicata* bars Baker's present claim. The procedural history giving rise to this theory is complex, but, in light of our disposition in favor of Otis on the grounds stated, we find no need to explain that history, nor to reach or decide Otis's *res judicata* argument.