**GENERAL MOTORS CORPORATION,**
**Plaintiff-Appellee,**

v.

**David J. BUHA and James B. Stone,**
**County District Judge,**
**Defendants-Appellants.**

**No. 78–1175.**

United States Court of Appeals,
Sixth Circuit.

Argued March 31, 1980.

Decided June 16, 1980.

456

Perry T. Christy, Christy, Robbins & Gantz, Dearborn, Mich., for defendants-appellants.

David M. Davis, Detroit, Mich., for plaintiff-appellee.

Before WEICK, LIVELY and ENGEL, Circuit Judges.

LIVELY, Circuit Judge.

This appeal requires us to determine whether benefits under a pension plan which is covered by the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001 et seq. (1976), are subject to garnishment by a creditor of a plan beneficiary. The appeal is from an order of the district court which permanently enjoined a judgment creditor and a state court judge from enforcing or attempting to enforce a writ of garnishment served on the trustee of a pension plan. General Motors Corporation (GM) sought the injunction as a fiduciary of the plan.

I.

The facts are not in dispute. The defendant Buha obtained a state court judgment against Walter D. Kinsky and his wife in a tort action. When the judgment was not paid Buha instituted post-judgment garnishment procedures. A writ of garnishment was served on the National Bank of Detroit in its capacity as trustee of a General Motors pension fund. When the trustee filed a disclosure indicating no liability to Kinsky, Buha demanded an examination of the garnishee. The matter was set for hearing on November 8, 1977 before the defendant, the Honorable James B. Stone, judge of the 34th judicial district of Michigan.

On November 2, 1977 GM filed the present action in the district court seeking to restrain enforcement of the writ of garnishment. The district court entered a temporary restraining order (TRO) pending hearing on GM's motion for a preliminary injunction. The TRO was entered at 5:40 p. m. on November 2nd without notice to the defendants. In granting the TRO the district court found that GM, as fiduciary of the pension plan, would be prevented from carrying out its lawful duties and responsibilities and "thereby be irreparably damaged and harmed" unless the defendants were immediately restrained. The defendants moved to dissolve the TRO and gave notice for a hearing on November 7th. Following a hearing the district court granted a preliminary injunction upon a finding of irreparable injury virtually identical to the finding which was recited in the TRO. Subsequently, on February 22, 1978, the district court entered a permanent injunction accompanied by an opinion in which it discussed all of the issues raised by the defendants.

II.

Before dealing with the substantive issue in the case we consider several procedural objections raised by the defendants.

A.

The defendants contend the district court had no authority to issue the TRO without notice to them. Rule 65(b), Fed.R. Civ.P., sets forth the conditions under which a TRO may be issued without notice to the adverse parties. It appears that one of these requirements was not met in that the

attorney for GM did not certify "to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting his claim that notice should not be required." Thus it was error for the district court to issue a TRO on the application of GM. However, the TRO was superseded by a preliminary injunction following notice and hearing. No prejudice resulted from entry of the TRO. Though it should not have been entered without compliance with Rule 65(b), in light of subsequent steps we conclude it was harmless error to grant the TRO.

## B.

◼ The judge to whom the application for injunctive relief was first presented by GM was disqualified to hear the matter. Upon representation by GM that this action was a "companion case" to an earlier one before Judge Ralph B. Guy, Jr., this action was reassigned to Judge Guy. The defendants contend that the two actions are not companion cases and that the present case should have been reassigned by "blind draw" pursuant to a local court rule of the Eastern District of Michigan. Judge Guy found that the present case and the earlier one before him were "provable by substantially the same evidence" and that judicial economy was served by assigning the present case to him. While the cases were not actually "companion cases," we find no abuse of discretion in his decision to accept assignment of the present case which involved the identical legal issue contained in the earlier case.

## C.

◼ The defendants next argue that the district court injunction in the present case violated the federal anti-injunction act, 28 U.S.C. § 2283 (1976), which provides:

A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments.

The district court found that an injunction in the present case was "expressly authorized by [an] Act of Congress . . . ." This exception to the prohibition against federal courts' enjoining state court proceedings has been discussed in several recent Supreme Court decisions. *See Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 97 S.Ct. 2881, 53 L.Ed.2d 1009 (1977), and *Mitchum v. Foster*, 407 U.S. 225, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). The parties agree it is not necessary for an Act of Congress to refer specifically to § 2283 in order to provide an express authorization and that *Mitchum, supra*, establishes the test for determining whether this exception applies. After ruling out several stricter tests, Justice Stewart wrote, "The test, rather, is whether an Act of Congress, clearly creating a federal right or remedy enforceable in a federal court of equity, could be given its intended scope only by the stay of a state court proceeding." *Mitchum, supra*, 407 U.S. at 238, 92 S.Ct. at 2160 (citations deleted). The defendants agree that the first prong of this test has been met in ERISA—that it confers a uniquely federal right or remedy. However, they contend that the second requirement of the test is not satisfied—that ERISA is not an act which "could be given its intended scope only by the stay of a state court proceeding."

The defendants assert that *Vendo Co. v. Lektro-Vend Corp., supra*, is controlling. In *Vendo* a plurality of the Court found that Section 16 of the Clayton Act does not come within the "expressly authorized" exception to the anti-injunction act. In reaching this conclusion the Court found that the first part of the *Mitchum* test was met—that the Clayton Act creates a "uniquely federal right or remedy." However, the Court then found that the second prong of the *Mitchum* test was not met. Emphasizing that § 2283 creates prohibitions that go beyond traditional principles of equity and comity, the Court stated that more is required to establish an exception than the fact that an important federal law is involved. To come within the "expressly authorized" exception "the Act countenancing the federal injunc-

tion must necessarily interact with, or focus upon, a state judicial proceeding." 433 U.S. at 640–41, 97 S.Ct. at 2892. Two Justices concurred in the result without adopting the plurality's test as quoted above and four members of the Court dissented.

ERISA was enacted, in part at least, to provide a uniform and systematic framework for regulation of employee benefit plans. It contains a provision for preemption of state laws [1] and confers exclusive jurisdiction in federal district courts [2] for actions by a participant, beneficiary or fiduciary "to enjoin any act or practice which violates any provision of [the subchapter entitled "Protection of Employee Benefit Rights"] or the terms of the plan." 29 U.S.C. § 1132(a). Congress sought to establish minimum standards to assure "the equitable character of such plans and their financial soundness" [3] in enacting ERISA. It is central to the statutory scheme that ERISA not be subject to state and local laws which might frustrate its goals. This was emphasized by Representative Dent, Chairman of the Subcommittee on Labor of the House Committee on Education and Labor, who stated:

> Finally, I wish to make note of what is to many the crowning achievement of this legislation, the reservation to Federal authority the sole power to regulate the field of employee benefit plans. With the preemption of the field, we round out the protection afforded participants by eliminating the threat of conflicting and inconsistent state and local regulation. 120 Cong.Rec. 29197 (1974).

■ We conclude that ERISA meets both prongs of the *Mitchum* test. When a district court finds that an action in a state court will have the effect of making it impossible for a fiduciary of a pension plan to carry out its responsibilities under ERISA, the anti-injunction provisions of § 2283

do not prohibit it from enjoining the state court proceedings. See *Marshall v. Chase Manhattan Bank*, 558 F.2d 680 (2d Cir. 1977); *Senco of Florida, Inc. v. Clark*, 473 F.Supp. 902 (M.D.Fla.1979); *Cartledge v. Miller*, 457 F.Supp. 1146 (S.D.N.Y.1978).

### D.

■ The defendants also maintain that the district court should have abstained even if it is determined that the anti-injunction act does not prohibit an injunction in this case. The defendants argue that considerations of federalism and comity require federal courts not to interfere in state procedures designed to make the judgments of state courts effective. Such considerations must always be weighed carefully by district courts when asked to enjoin state court proceedings. However, the state court proceedings which were enjoined in the present case were not criminal (*Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971)) or akin to criminal (*Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975)) and did not involve the integrity of the state's judicial processes (*Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977)). Further, GM was not a party to the state court proceedings and could not have initiated an action in state court in its fiduciary capacity because of the preemption provision of 29 U.S.C. § 1132(e), *supra*. Thus abstention would not have been required on the ground that GM could have tendered its federal claim in a single state court proceeding. See *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). We see no state interest in the garnishment proceedings sufficient to require the district court to abstain. *Cf., Marshall v. Chase Manhattan Bank, supra*, 558 F.2d at 683–84.

---

1. 29 U.S.C. § 1144(a) provides:

   Except as provided in subsection (b) of this section, the provisions of this subchapter and subchapter III of this chapter shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 1003(a) of this title and not exempt under section 1003(b) of this title. This section shall take effect on January 1, 1975.

2. 29 U.S.C. § 1132(e).

3. 29 U.S.C. § 1001(a).

## III.

### A.

Garnishment is not mentioned in ERISA. However, both ERISA and the section of the Internal Revenue Code (IRC) dealing with "qualified" pension, profit-sharing and stock bonus plans contain provisions against assignment or alienation of plan benefits. Nearly identical language in 29 U.S.C. § 1056(d)(1) (ERISA) and 26 U.S.C. § 401(a)(13) (IRC) requires plans to contain a provision that "benefits provided under the plan may not be assigned or alienated." The General Motors plan which was the object of the writ of garnishment contains this provision. There is one exception in ERISA to the requirement of non-assignability which permits a "voluntary and revocable assignment of not to exceed 10 per cent of any benefit payment . . . ." 29 U.S.C. § 1056(d)(2). A similar exception is contained in 26 U.S.C. § 401(a)(13). The Joint House and Senate Conference Report refers to the requirement and the exception as follows:

*Alienation*

Under the conference substitute, a plan must provide that benefits under the plan may not be assigned or alienated. However, the plan may provide that after a benefit is in pay status, there may be a voluntary revocable assignment (not to exceed 10 percent of any benefit payment) by an employee which is not for purposes of defraying the administrative costs of the plan. For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment. Vested benefits may be used as collateral for reasonable loans from a plan, where the fiduciary requirements of the law are not violated. H.R.Rep.No. 93–1280, 93 Cong. 2d Sess., reprinted in [1974] U.S. Code Cong. & Admin.News, pp. 4639, 5038, 5061 (footnote deleted).

Both sides find support in this language. The plaintiff argues that "this rule" refers to the exception, and that since garnishments are not allowed within the 10 per cent exception, they are clearly not allowed above that amount. On the other hand, the defendants see "this rule" as a reference to the general requirement of a provision against assignment or alienation. Under this reading a garnishment is not to be considered an assignment, and therefore is not prohibited. Neither of these arguments is convincing, and we are unable to decide the question on the basis of this portion of the legislative history.

### B.

■ The defendants contend that use of the words "assignment" and "alienation" in § 1056(d)(1) indicates that Congress intended to prohibit only voluntary acts by the pension plan beneficiaries. They point out that Congress has clearly prohibited garnishments and attachments when that is its intention. They list ten different statutes in which Congress has made a distinction between voluntary assignments and involuntary encroachments on benefits by way of garnishment, execution, attachment, etc. *See, e. g.*, 5 U.S.C. § 8346 [Civil Service retirement benefits]; 10 U.S.C. § 1450 [benefits under serviceman's survivor benefits plan]. This is a strong indication that Congress recognized the difference between voluntary and involuntary encroachments on benefit funds and has stated it specifically when both are forbidden. Nevertheless, Congress did use the word "voluntary" in specifying those assignments which qualify for the 10 per cent exception in § 1056(d)(2). This can reasonably be read as an indication that the preceding language in § 1056(d)(1) included all encroachments, both voluntary and involuntary.

### C.

The court decisions which have dealt with the issues are not particularly helpful. By far the greatest number are concerned with subjecting pension plan benefits to the payment of alimony and family support. The federal cases have construed ERISA's provision against assignment or alienation as prohibiting garnishments generally, but have found an exception where the purpose of the garnishment is to enforce the duty of maintenance and support owed by a plan

beneficiary to a spouse or dependents. *E. g., American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118 (2d Cir. 1979); *Senco of Florida, Inc. v. Clark, supra; Cartledge v. Miller, supra; Cody v. Riecker*, 454 F.Supp. 22 (E.D.N.Y.1978), *aff'd*, 594 F.2d 314 (2d Cir. 1979). The state courts have split on the subject. The Appellate Division of the New York Supreme Court held in *National Bank of North America v. IBEW Pension Funds*, 69 A.D.2d 679, 419 N.Y.S.2d 127, 131 (1979), that the anti-assignment provisions of ERISA do not prohibit garnishments. On the other hand, the Supreme Court of Missouri found in *Electrical Workers v. IBEW–NECA Holiday Trust*, 583 S.W.2d 154, 157 (1979), that "ERISA clearly preempts the rights of creditors to satisfy a judgment from payments made under an employee pension benefit plan." Other state cases concerning attachments or garnishments against pension plan benefits to enforce family support obligations either have assumed a general prohibition against involuntary encroachments or found it unnecessary to decide that question, but have recognized the validity of garnishments for family support. *E. g., Western Electric Co. v. Traphagen*, 400 A.2d 66, 70 (N.J.Super. 1979); *Commonwealth v. Aluminum Co. of America*, 398 A.2d 179, 182 (Pa.Super.1979); *Biles v. Biles*, 394 A.2d 153, 155 (N.J.Ch. 1978).

### D.

GM relies strongly on an administrative interpretation of the anti-assignment provisions of ERISA which we find persuasive. ERISA resulted from the joint efforts of four congressional committees. The House Ways and Means Committee and the Senate Finance Committee reported out bills dealing with the tax aspects of pension funds. The House Education and Labor Committee and the Senate Labor and Public Welfare Committee reported out bills which dealt primarily with vesting, funding and participation in private pension plans. ERISA emerged as the product of a joint conference after both chambers passed similar bills. Because two executive departments—Labor and Treasury—are involved

in administration of ERISA, the congressional committees made an allocation of responsibilities under the Act to avoid conflicts and duplications. The Act provides for a division of authority in the issuance of regulations:

> (c) Extended application of regulations prescribed by Secretary of Treasury relating to minimum participation standards, minimum vesting standards, and minimum funding standards.

> Regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, and 412 of Title 26 (relating to minimum participation standards, minimum vesting standards, and minimum funding standards, respectively) shall also apply to the minimum participation, vesting, and funding standards set forth in parts 2 and 3 of subtitle B of subchapter I of this chapter. Except as otherwise expressly provided in this chapter, the Secretary of Labor shall not prescribe other regulations under such parts, or apply the regulations prescribed by the Secretary of the Treasury under sections 410(a), 411, 412 of Title 26 and applicable to the minimum participation, vesting, and funding standards under such parts in a manner inconsistent with the way such regulations apply under sections 410(a), 411 and 412 of Title 26. 29 U.S.C. § 1202(c).

This is reflected in the Conference Report, which states:

> *Issuance of regulations.*—Under the conference substitute the Department of the Treasury is to prescribe the necessary regulations under the general provisions relating to participation, vesting, and funding except where specific authority is given to the Secretary of Labor to prescribe the regulations. For example, the Secretary of Labor is to prescribe regulations defining what constitutes a year of service for purposes of the participation and vesting standards of the Act. Regulations which are prescribed by the Treasury or Labor Departments in those areas in which jurisdiction is assigned to

them are to be binding upon the other department (unless provided otherwise by the bill). Where the final authorization to prescribe regulations under a provision is provided to one department or the other, it is expected that the two departments will consult and coordinate closely with each other in prescribing the necessary regulations which need to be issued under the various provisions of the bill.

Under the conference substitute whenever in the bill the Secretary of the Treasury and the Secretary of Labor are required to carry out provisions relating to the same subject matter, they are to consult with each other in the developing of rules, regulations, practices and forms to the extent possible for the efficient administration of the provisions in order to reduce to the maximum extent practical, duplication of effort, conflicting requirements and the burden of compliance (including the annual reports which must be filed by the plan administrators). The two Secretaries may make arrangements or agreements for cooperation and mutual assistance in the performance of the functions they have under the bill as they find practicable and consistent with the law. The maximum coordination is expected in those areas where one agency has the authority to prescribe regulations and also, of course, where the regulations are to be a cooperative effort of both

agencies.[4]   H.R.Rep.No. 93–1280, 93 Cong. 2d Sess., reprinted in [1974] U.S. Code Cong. & Admin.News, pp. 5038, 5139.

■ Pursuant to this authority the Secretary of the Treasury issued Internal Revenue Service Regulation § 1.401(a)–13, which provides in part:

(b) *No assignment or alienation.*—(1) *General rule.* Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process. 26 C.F.R. § 1.401(a)–13 (1979).

As Judge Garth pointed out in *Baker v. Otis Elevator Co.*, 609 F.2d 686, 690 (3d Cir. 1979), Congress specifically delegated to the Secretary of the Treasury the authority to issue regulations concerning participation, vesting and funding standards. Moreover, Congress provided that regulations issued by the Treasury Department would apply to analogous employee benefit sections of Title I of the Act in the same areas. Since the regulation in question is a legislative rather than an interpretive regulation, it is required to be followed unless it was issued in excess of the statutory authority of the Secretary or was "arbitrary, capricious, or

**4.** In presenting the Conference Report to the Senate, Senator Harrison Williams, Chairman of the Committee on Labor and Public Welfare, stated:

One of the important issues dealt with by the conferees was the allocation of responsibility between the appropriate administrative agencies for the administration and enforcement of the bill's substantive provisions. Under the conference substitute, a significant role will be accorded in the administration of the participation, vesting and funding standards to both the Department of Labor and, in the case of plans which seek tax qualification, to the Internal Revenue Service. In order to avoid duplication of effort on the part of the two agencies, the conference substitute delegates certain particular functions to one agency or the other. In addition, the bill provides guidelines for coordination of administration and enforcement between the two agencies.

Since it is probable that in view of the new requirements almost all pension plans will seek tax qualification, the conference substitute, in effect, accords the basic responsibility with respect to participation, vesting and funding to the Internal Revenue Service, although the Secretary of Labor will have authority with regard to the granting of certain variances, for the promulgation of certain regulations, and for intervening in the tax qualification procedure in specified instances. In addition, the Secretary of Labor, on the request of participants, or the Secretary of the Treasury, will be authorized to bring civil actions to require payment of benefits denied to any participant or beneficiary in violation of the participation, or vesting provisions of the act or to otherwise redress violations of such provisions.

[1974] U.S.Code Cong. & Admin.News at pp. 5187–5188.

an abuse of discretion, or otherwise not in accordance with law." *Id.* at 691, *quoting Batterson v. Francis,* 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977). The regulation in question clearly passes this test.[5]

Giving the required effect to Reg. § 1.401(a)–13, we conclude that pension plan benefits are not subject to garnishment and that the district court properly enjoined the proceedings in the Michigan court. However, the injunction should have been issued only to restrain Buha, the applicant for the writ of garnishment. This would have been effective to prevent the impermissible encroachment on the pension fund. As Judge Phillips stated for this court in *Lamb Enterprises, Inc. v. Kiroff,* 549 F.2d 1052, 1060 (6th Cir.), *cert. denied,* 431 U.S. 968, 97 S.Ct. 2927, 53 L.Ed.2d 1064 (1977), "It was a violation of fundamental principles of State-federal relations for a federal judge to enjoin two State judges and their court personnel, when an injunction against the litigant would have accomplished the same purpose."

The judgment of the district court is affirmed as to the defendant Buha, with each party bearing its own costs on appeal. The judgment against Judge Stone is reversed with directions that the complaint be dismissed as to him. Judge Stone will recover his costs on appeal from GM.

**5.** Though *Baker* involved 26 U.S.C. § 401(a)(14) and 29 U.S.C. § 1056(a) and the present case involves 26 U.S.C. § 401(a)(13) and 29 U.S.C. § 1056(d), all of § 1056 is within "parts 2 and 3 of subtitle B of subchapter I of this chapter," the area designated in 29 U.S.C. § 1202(c) as subject to regulations by the Secretary of the Treasury.