**CENERGY CORPORATION, a Nevada corporation, Plaintiff,**

v.

**BRYSON OIL & GAS P.L.C., a public limited company organized under the laws of Northern Ireland, Defendant.**

No. CV–N–87–113–ECR.

United States District Court, D. Nevada.

March 24, 1987.

Roger W. Jeppson, Woodburn, Wedge, Blakey and Jeppson, Reno, Nev. and Charles W. Schwartz, Vinson & Elkins, Houston, Tex., for plaintiff.

Will Kemp, Jones, Jones, Close & Brown, Chartered, Las Vegas, Nev. and William A. Prezant, Anderson, Pearl & Prezant, Reno, Nev. and Rod Phelan and Bryant C. Boren, Jr., Huges and Luce, Dallas, Tex., for defendant.

## ORDER

EDWARD C. REED, JR., Chief Judge.

On March 10, 1987, the plaintiff in this case, Cenergy Corp., filed a complaint for declaratory relief with the Court. In essence, Cenergy seeks a declaration from the Court that it is not required under Nevada law to divulge its shareholder list to the defendant, Bryson. Bryson, on March 2, 1987, had served a Schedule 13(d) upon Cenergy in its Dallas, Texas offices, and at the same time demanded that the Cenergy shareholder list be turned over. In its demand, Bryson represented itself to be a holder of over 5% of the shares of Cenergy, and that under NRS § 78.105, it was therefore entitled to have access to the shareholder list. At that time, however, Bryson was not a record owner of the shares, in that a third party was record owner for the benefit of Bryson. In addition, Bryson requested not only the stock ledger, but also all of the names of the beneficial owners of the shares. In the face of this demand, Cenergy filed its declaratory relief action.

Accompanying the complaint for declaratory relief was a motion for preliminary injunction, which sought to restrain Bryson from filing and prosecuting any action against Cenergy relating to the corporate governance of Cenergy or arising out of the beneficial ownership by Bryson of Cenergy shares in any other jurisdiction than the United States District Court, District of Nevada, Northern Division. On March 13, 1987, Cenergy presented the Court with a motion for temporary restraining order, in which Cenergy requested an identical anti-suit injunction to issue against Bryson.

The motion for temporary restraining order (TRO) was tendered to the Court as an *ex parte* motion. The moving papers did not request a hearing, and they indicated that notice to the other party would cause Bryson to file suit in another district immediately. On this basis, the Court believed that the application for TRO was made on an *ex parte* basis, in view of the apparent urgent need for the relief requested. It appears that Cenergy's counsel, however, through discussions with the Court's calendar clerk, had actually believed that the TRO would not be issued without notice. Cenergy's counsel also apparently believed that a hearing had been set for March 17, 1987, at which time the merits of the TRO would be debated by both parties. As noted above, however, the face of the moving papers contained no indication that a hearing had been scheduled or was even desired. Instead, as stated above, the motion for TRO seemed to request the entry of the TRO without notice. On this basis, the Court issued the TRO without notice on an *ex parte* basis.

Bryson moved, on March 16, 1987, to dissolve the TRO. The Court, by its order of the same day, set a hearing on that motion for March 19, 1987. Both parties appeared at that hearing, and the Court heard argument regarding the merits of the restraining order. In addition, the parties were afforded an opportunity to present evidence in behalf of their cases. In view of this hearing, the parties agreed that the hearing on the order to show cause for preliminary injunction, set for March 27, 1987, would no longer be necessary, and they stipulated to the Court's vacating the hearing. The March 19 hearing thus served as the hearing on the motion to dissolve and the hearing on preliminary injunction.

## ENTRY OF ORIGINAL TEMPORARY RESTRAINING ORDER

The Federal Rules of Civil Procedure provide that a TRO may be granted without notice only if

(1) it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition, and (2) the applicant's attorney certifies in writing the efforts, if any, which have

been made to give notice and the reasons supporting his claim that notice should not be required. Every temporary restraining order granted without notice shall be indorsed with the date and hour of issuance; shall be filed forthwith in the clerk's office and entered of record; [and] shall define the injury and state why it is irreparable and why the order was granted without notice....

Fed.R.Civ.P. 65(b). The Rule thus contemplates that the applicant for the TRO must attempt to give some sort of notice, if at all possible. *Carroll v. Princess Anne*, 393 U.S. 175, 181, 89 S.Ct. 347, 351, 21 L.Ed.2d 325 (1968). If it is impossible to give notice, then the Rule requires the applicant to indicate why it should not be required. Fed.R.Civ.P. 65(d).

■ In this case, Bryson objects to the entry of the TRO without notice on three grounds. First, it contends that no notice was given, although it was possible for Cenergy to have done so. From the face of Cenergy's application, however, it appears that the request was for an *ex parte* TRO. As noted above, no request for hearing was present in the moving papers. Moreover, the language of the TRO itself indicated to the Court that notice of the TRO might "tip the hand" of Cenergy to Bryson. So alerted to the imminent entry of restraint against it, Bryson could then have proceeded to file suit in another district or state court before the TRO could have taken effect. In such a case, it appears proper to enter the TRO without notice, for giving notice itself may defeat the very purpose for the TRO.

■ Bryson further objects to the entry of the TRO without notice, in that the order does not state why it was entered *ex parte*. The Rule clearly requires any *ex parte* TRO to include such an explanation, but failure to include this statement does not appear reason to void the order in view of the subsequent hearing held in this case. At the hearing of March 19, 1987, both parties were accorded the opportunity to present evidence and to argue the merits of the TRO. The fact that the order granting the TRO does not state why notice is not required is of no moment, therefore, because the TRO and the motion to dissolve it were considered at length in the March 19th hearing. In addition, this hearing was treated by both parties as the hearing on the order to show cause for preliminary injunction. Case law indicates that such a hearing will vitiate any possible harmful effects arising out of notice improprieties in the original TRO process. *General Motors Corp. v. Buha*, 623 F.2d 455, 458 (6th Cir.1980).

■ Bryson also contends that Cenergy offered no affidavit or verified complaint in support of the motion for TRO that showed the possibility of immediate and irreparable injury, loss or damage which would result before the opposition could be heard. In the moving papers one can find the affidavit of Cenergy's Chief Executive Officer, James Hunt, from which the required showing can be inferred. One may quarrel with the actual merits of the position taken by Hunt in his affidavit, but it is sufficient to meet the requirements of the Rule. In addition, any deficiency created by the affidavit is overcome by the hearing on the order to show cause for preliminary injunction. *See Buha, supra*. Based upon the foregoing, the TRO issued on March 13, 1987, was not technically deficient and need not be dissolved on those grounds.

## MOTION TO DISSOLVE TRO AND MOTION FOR PRELIMINARY INJUNCTION

Whether the Court should now dissolve the March 13th TRO and whether the preliminary injunction requested by Cenergy should be granted is largely a question of the ability of this Court to enjoin a party from filing suit in another district or state. Research reveals a distinction between anti-suit injunctions directed at possible litigation in other federal district courts and such injunctions directed at state court actions.

## FEDERAL COURTS

■ In order for one federal district court to restrain parties from proceeding with a suit in another federal district, a three-part test must be met. First, the

court issuing the restraining order or injunction must be the court in which the action is first filed. That is, only the court which has initial jurisdiction over the parties and the subject matter has the power to enjoin subsequent lawsuits. In addition, the parties and the causes of action in the subsequent lawsuit must be identical to those in the initial suit for the injunction to issue. Finally, the party seeking the injunction must ask the second court to stay its prosecution in view of the first action before injunctive relief is appropriate. Only after the stay is sought and denied by the second court may a party then approach the first court for the injunction. *Exxon Corp. v. United States,* 655 F.2d 1112, 1116 n. 5 (Temp.Emer.Ct.App.1981); *Cessna Aircraft Co. v. Brown,* 348 F.2d 689, 692 (10th Cir.1965); *Food Fair Stores, Inc. v. Square Deal Market Co., Inc.,* 187 F.2d 219, 220 (D.C.Cir.1950); *Tele-Wine, Inc. v. Foremost Sales Promotions,* 510 F.Supp. 1341, 1343 (S.D.N.Y.1981); *Montclair Electronics, Inc. v. Electra/Midland Corp.,* 326 F.Supp. 839, 843 (S.D.N.Y.1971). The standards applied by these courts seem to find implicitly that the irreparable injury requirement normally required for TRO or preliminary injunction is automatically met upon the showing of the three factors. This seems logical, in that once suit is filed in another district, the possibility of inconsistent adjudication looms large, and the injury caused to the parties and the court by duplicative litigation is clear. Similarly, it seems that no such inference of irreparable harm may be drawn until the second suit is filed.

In the present case, Cenergy cannot meet several of the factors required for preliminary injunctive relief. Initially, plank two of the test requires that a second suit actually be filed, for, unless that second suit is filed, the first court has no way of judging whether the latter cause of action is identical to the former. Cenergy would contend that the injunction it seeks would restrain the filing of any action which would be a *counterclaim* in these proceedings made compulsory under Fed.R. Civ.P. 13(a). In that the test speaks in terms of identical causes of actions, Cener-

gy would argue that the above test is thus inapplicable. It is clear that a federal court may require parties to bring all compulsory counterclaims before it by means of an injunction. *Columbia Plaza Corp. v. Security National Bank,* 525 F.2d 620, 622 (D.C.Cir.1975). But a court seeking to enjoin a counterclaim must also be certain that the second action is actually a counterclaim to the initial suit. Until that second suit is actually filed, no court can actually say what lawsuits the parties will attempt to bring in the second court. Because of this, preliminary injunctive relief is premature in this case.

In addition, the cases indicate that the party seeking to enjoin the subsequent cause of action must first request the second court to stay its hand voluntarily before the more drastic use of injunction is employed. This seems to be a simple matter of comity between the various federal districts. *Cf. Span-Eng Associates v. Weidner,* 771 F.2d 464, 468 (10th Cir.1985) (injunctions against other federal proceedings should be granted only in the most unusual cases) (*quoting Bergh v. Washington,* 535 F.2d 505, 507 (9th Cir.), *cert. denied,* 429 U.S. 921, 97 S.Ct. 318, 50 L.Ed.2d 288 (1976)); *O'Hara International Bank v. Lambert,* 459 F.2d 328, 331 (6th Cir. 1972) (only justification for injunction against another federal district court is to prevent vexatious and oppressive suits). Because Bryson has not had the opportunity to file the second suit in this case, there is no second court from which to seek the voluntary stay. Cenergy's application is therefore premature on this ground as well, and the motion to dissolve the TRO must be granted and the motion for preliminary injunction must be denied as far as the federal courts are concerned.

STATE COURTS

Cenergy's application for TRO and preliminary injunction also seeks to restrain Bryson from filing any related action in state courts as well. Because Cenergy is incorporated under Nevada law, choice of law rules in all states would invariably result in Nevada law being applied in any case related to the issues in this suit. Cen-

ergy apparently fears that state court judges outside of Nevada would not be able to apply Nevada law correctly, and that inconsistent adjudication would result from parallel suits.

 As an initial matter, the Anti-Injunction Act, 28 U.S.C. § 2283, presents a formidable barrier for the federal courts whenever injunctions are aimed at state court proceedings. That Act, however, only operates to bar injunctions directed at state court proceedings already in progress. It does not prevent a federal court from enjoining the initiation of such proceedings. *Dombrowski v. Pfister*, 380 U.S. 479, 484 n. 2, 85 S.Ct. 1116, 1119 n. 2, 14 L.Ed.2d 22 (1964); *BGW Associates, Inc. v. Valley Broadcasting Co.*, 532 F.Supp. 1115, 1117 (S.D.N.Y.1982). It is thus clear that the Court could enjoin Bryson from instituting suit in a state forum. The cases indicate, however, that such injunctions against state court actions are available only upon a showing of irreparable injury, rather than the looser standard for injunctions directed at federal courts. *See Wilson v. Schnettler*, 365 U.S. 381, 385, 81 S.Ct. 632, 635, 5 L.Ed.2d 620 (1960) (federal courts should not exercise their discretionary power to interfere with threatened state court proceedings except in those exceptional cases which call for the interposition of equity to prevent clear and imminent irreparable injury).

 Cenergy has not shown the Court that it would be irreparably harmed if it were required to defend a related lawsuit in a state court. Certainly, the mere possibility that one might be sued somewhere other than in a forum of one's choice does not give rise to irreparable harm. *See Banke v. Community Realty Corp.*, 497 F.Supp. 409, 411 (D.Md.1980). If this were the case, the entire legal system of our country would be bound by the shackles of injunctions issuing from one court against another. Cenergy instead contends that it faces irreparable harm from the possibility of inconsistent adjudications issuing from this court and a state court. Bryson, in Cenergy's view, will immediately bring a petition for a writ of mandamus in Texas state court, directing Cenergy's officers to deliver the stock ledger pursuant to Nevada law. Because of the Texas court's lack of familiarity with Nevada law, Cenergy fears that the improper result will be reached, and that this Court will be powerless to correct the error. Cenergy contends that this is enough of an irreparable harm showing for the injunction to issue.

This position rests on too many untenable assumptions for the Court to find a possibility of irreparable harm. Initially, neither Bryson nor Cenergy are qualified to do business for purposes of the Texas door closing statute. As such, they are both prohibited from bringing suit in Texas state courts. Although one may reasonably believe that Bryson could qualify in a matter of days, it is nonetheless an assumption which weakens Cenergy's argument. In addition, Cenergy assumes that a Texas state judge would not voluntarily stay the proceedings in that case if asked to do so. In view of the fact that this action was first filed, and was filed in a court having more familiarity with Nevada law, it seems quite possible that a Texas court might stay its case as a matter of comity.

Most of all, Cenergy's position assumes that Texas judges are incapable of applying Nevada law correctly, and that inconsistent adjudications would necessarily result. This is simply too far a leap for the Court to make. There is nothing so peculiar about Nevada corporations law that mandates it be interpreted solely by judges from this state. In addition, the Court is not aware of any reputation of Texas judges' being of a lesser intellectual capacity than their brothers and sisters in other courts. Even if the lower Texas courts were to make an error, moreover, Cenergy could seek redress from all the levels of the Texas appellate system. The Court cannot say, therefore, that there is a possibility of irreparable harm in being exposed to suit in the Texas state system. *See Banke, supra*, pg. 872.

LOS ANGELES COLISEUM TEST

This result is the same under the test for preliminary injunction formulated by the Ninth Circuit in *Los Angeles Coliseum Commission v. National Football League,* 634 F.2d 1197 (9th Cir.1980). In that case, the court described a continuum of factors whereby the applicant could demonstrate a need for preliminary injunctive relief. At one end of the spectrum, the applicant would need to show a combination of probable success on the merits and the possibility of irreparable injury. *Id.,* at 1201. At the other end of the spectrum, the applicant would have to show that serious questions are raised on the merits and that the balance of hardships tips sharply in its favor. *Id.*

■ Cenergy fails to meet either test. Under the first formulation, it would have to show a probable success on the merits *and* the possibility of irreparable injury. Whereas it seems that Cenergy may well succeed on the merits of this suit, it has not shown the court that it would be irreparably harmed if the anti-suit injunction does not issue. *See, supra,* pg. 872.

In addition, Cenergy does not qualify for injunction under the latter *L.A. Coliseum* test. This requires that the applicant demonstrate that the balance of hardships tips *sharply* in its favor. As noted above, Cenergy can demonstrate no hardship in defending a lawsuit in a forum not of its own choice, especially where that forum is the state in which its world headquarters are located. In addition, the possibility that inconsistent results may be reached in the case is not very great, and does not cause the scales of justice to teeter. On the other side of the equation, Bryson would be prevented from bringing suit in the forum of its choice if this injunction were granted. In view of the hesitation with which courts view these sorts of anti-suit injunctions, it seems clear that the balance of hardships does not heavily favor Cenergy, and that the injunction should not issue.

IT IS, THEREFORE, HEREBY ORDERED that Bryson's motion to dissolve the temporary restraining order entered on March 13, 1987, is GRANTED.

IT IS FURTHER ORDERED that Cenergy's motion for preliminary injunction is DENIED.