978 P.2d 783

**Janie DITTO, Plaintiff–Appellee,**

v.

**John A. McCURDY, Jr., Defendant–Appellant, and Karla Scarpiova, Defendant.**

**No. 21859.**

Supreme Court of Hawai'i.

May 12, 1999.

---

Tom C. Leuteneker, Wailuku, Maui, James L. Starshak, Honolulu, and Randall H. Endo, Wailuku, Maui (of Carlsmith Ball), on the briefs, for defendant-appellant John A. McCurdy, Jr.

David C. Schutter and Christopher A. Dias (of David C. Schutter & Associates), on the briefs, Honolulu, for plaintiff-appellee Janie Ditto.

MOON, C.J., KLEIN, LEVINSON, NAKAYAMA, and RAMIL, JJ.

Opinion of the Court by MOON, C.J.

Defendant-appellant John A. McCurdy, Jr. (McCurdy or Defendant) has taken consolidated appeals [1] from the first circuit court's (1) August 19, 1998 order granting in part and denying in part plaintiff-appellee Janie Ditto's motion for issuance of garnishee summons after judgment, (2) September 22, 1998 garnishee order, and (3) October 16, 1998 order denying Defendant's motion for stay on appeal and for an interlocutory appeal. Briefly stated, this appeal arises out of a

---

1. By order dated November 27, 1998, we consolidated Nos. 21859, 21974, and 21990 under No. 21859.

medical malpractice suit in which Ditto prevailed and thereby obtained a judgment against McCurdy. Notwithstanding that McCurdy filed for bankruptcy, Ditto instituted garnishment proceedings, seeking to collect on the judgment from McCurdy's interests in two pension plans.

In this appeal, we are asked to determine whether the anti-alienation provision, or section 206(d)(1), of the Employee Retirement Income Security Act of 1974 (ERISA), Pub.L. 93–406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001, *et seq.* (1994)), precludes the garnishment of two ERISA-qualified pension plans, thereby preempting Hawai'i Revised Statutes (HRS) § 651–124 (1993), which governs attachment and execution with respect to pension money. Pursuant to HRS § 651–124, the right of a debtor to pension money is "exempt from attachment, execution, seizure, the operation of bankruptcy or insolvency laws under 11 [U.S.C.] section 552(b), or under any legal process whatever." The statute provides, however, that "this section shall not apply to[,]" *inter alia,* "contributions made to a plan or arrangement within the three years before the date a debtor files for bankruptcy, whether voluntary or involuntary, or within three years before the date a civil action is initiated against the debtor[.]" The circuit court, relying upon this exception, granted Ditto's motion for issuance of garnishee summons after judgment and "order[ed] that a garnishee summons be issued to Hawaiian Trust Company, Ltd. [ (Hawaiian Trust) ] directing it to disclose and immediately deliver the amount of $65,910.00 to Ditto's attorneys[.]"

McCurdy challenges the circuit court's orders, arguing that, because section 206(d)(1) of ERISA prohibits garnishment of his ERISA pension plan benefits, the exception to HRS § 651–124 is preempted. For the reasons stated below, we agree with McCurdy and, accordingly, reverse.

## I. BACKGROUND

### A. *The Underlying Case*

Ditto was disfigured as a result of breast augmentation surgery performed by McCur-

dy and numerous complications that arose therefrom. In 1989, Ditto filed a medical malpractice action against McCurdy, alleging negligence and fraud and claiming punitive damages. Following a three-week trial, the jury, in a special verdict, found McCurdy liable for negligence, fraud, and punitive damages, awarding Ditto $3,500.00 in special damages, $1,000,000.00 in general damages, $400,000.00 in damages for fraud, and $600,-000.00 in punitive damages. Judgment was entered on July 7, 1992 [hereinafter, the July 7, 1992 judgment].

On appeal, the Intermediate Court of Appeals (ICA) affirmed the jury's award of special, general, and punitive damages for negligence, but vacated the jury's finding of liability for fraud and remanded the case for a new trial on the fraud claim. *See Ditto v. McCurdy,* 86 Hawai'i 93, 947 P.2d 961 (App. 1997), *aff'd in part and rev'd in part,* 86 Hawai'i 84, 947 P.2d 952 (1997) [hereinafter, *Ditto I* ]. After granting McCurdy's petition for writ of certiorari, this court reversed the jury's finding of liability with respect to fraud, vacated the jury's award of punitive damages, and remanded the case with instructions to the trial court to dismiss the fraud count and conduct a new trial solely on the issue of the amount of punitive damages owed. *See Ditto v. McCurdy,* 86 Hawai'i 84, 86, 947 P.2d 952, 954 (1997) [hereinafter, *Ditto II* ]. On January 7, 1998, this court entered notice and judgment on appeal as follows:

Pursuant to the Opinion of the Supreme Court of the State of Hawaii entered on November 6, 1997 [ (*Ditto II* ) ]:

1.  The jury's finding of liability with respect to fraud is reversed and the Circuit Court is directed to dismiss the fraud count;

2.  The jury's award of punitive damages is vacated;

3.  A new trial is ordered solely on the issue of the amount of punitive damages to be awarded;

4.  The June 9, 1997 Decision of the [ICA] is affirmed in all other respects; and

5.  Pursuant to Rule 37 of the *Hawaii Rules of Appellate Procedure,* inter-

est at ten percent (10%) per year pursuant to *Hawaii Revised Statutes* § 478–3 shall be applied to the $1,045,606.30 affirmed ($3,500.00 in special damages, $1,000,000.00 in general damages and $42,106.39 in costs not appealed) from the date of the July 7, 1992 Judgment.

## B. *McCurdy's Bankruptcy*

Shortly after Ditto prevailed at trial, McCurdy, on October 20, 1992, filed a voluntary petition for reorganization under Chapter 11 of the United States Bankruptcy Code [hereinafter, Bankruptcy Code] in the United States Bankruptcy Court for the District of Hawai'i. The case was thereafter converted to a petition for liquidation under Chapter 7 of the Bankruptcy Code. On December 24, 1996, the bankruptcy court ordered, adjudged, and decreed that all debts set forth in the July 7, 1992 judgment were nondischargeable pursuant to 11 U.S.C. § 523. On May 7, 1997, Ditto sought relief from the automatic bankruptcy stay in order to execute upon her nondischargeable debt. On August 22, 1997, the bankruptcy court granted relief from the automatic stay as to two of McCurdy's pension plans, specifically, "Pension Plan No. 150647006 at American Trust Company of Hawaii, Inc., which is now Account No. 3506470[004] at the Hawaiian Trust Company [[hereinafter, Pension Plan No. 1]], and Pension Plan No. 150647014 at American Trust Company of Hawaii, Inc., which is now Account No. 3506470[12] at the Hawaiian Trust Company [[hereinafter, Pension Plan No. 2]]." The parties also refer to Pension Plan No. 1 as McCurdy's "Profit Sharing Plan" and Pension Plan No. 2 as McCurdy's "Transferred Defined Benefit Pension Plan." We note that previously, on June 6, 1997, the bankruptcy court had declared that Pension Plan Nos. 1 and 2 [hereinafter, collectively, the Plans or Pension Plan Nos. 1 and 2] were not the property of the bankruptcy estate.

## C. *Garnishment Proceedings In Circuit Court*

On October 10, 1997, Ditto filed an ex parte motion for issuance of garnishee summons after judgment, requesting that the circuit court issue a garnishee summons to Hawaiian Trust. That same day, the circuit court issued a garnishee summons and order [hereinafter, first garnishee summons], directing Hawaiian Trust, as garnishee, to disclose under oath

whether you have, or at the time of service:

   a.  Had any of the goods or effects of [McCurdy] ("Debtor") in your hands, and if so, their nature, amount and value; OR

   b.  Were or are you indebted to the DEBTOR, and if so, the nature and amount of the debt; OR

   c.  Debtor has in receipt from you any salary, wages, commissions, stipend, annuity, net income or a portion of net income under a trust, and if so, the amount or rate thereof.

On October 15, 1997, Hawaiian Trust filed its answer and disclosure, stating in pertinent part that, at the time process was served, "there was on deposit with Garnishee [Hawaiian Trust] a Profit Sharing Plan ("Plan") qualified under Section 401(a) of the Internal Revenue Code with Garnishee as Trustee, of which [McCurdy] is a participant." Hawaiian Trust claimed, however, that "said Plan is exempt from the garnishee process under Section 12.01 of the Plan and Section 206(d)(1) of ERISA. This exemption from garnishee process preempts state law. . . ."

The circuit court issued a garnishee order [hereinafter, first garnishee order] on November 19, 1997, stating:

Based upon Hawaiian Trust Company, Ltd.'s disclosure that it has funds belonging to McCURDY and good cause appearing therefore,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that Garnishee Hawaiian Trust Company, Ltd. remit payment of funds it holds belonging to McCurdy to DITTO, through her attorneys[ ] . . . upon proper service of this Order. . . .

On December 1, 1997, McCurdy and Hawaiian Trust filed a motion to set aside and

vacate the first garnishee order [hereinafter, motion to set aside]. On December 17, 1997, McCurdy's ex-wife, Marivic McCurdy (Marivic), joined in the motion to set aside, stating that the family court of the first circuit had awarded "an interest in the subject pension plans of [McCurdy] to me, his ex-wife[ ]" as part of the divorce settlement.

The motion to set aside and Marivic's joinder came on for hearing on December 23, 1997. The circuit court, via minute order dated January 22, 1998, granted the motion and Marivic's joinder. In granting the relief sought by McCurdy, Hawaiian Trust, and Marivic, the circuit court reasoned in relevant part that the parties, "including but not limited to [Ditto], [McCurdy,] and [Marivic] may have substantial and competing rights in the subject pension plan which should be the subject of further hearing and a more complete evidentiary record." The written order granting the motion to set aside and the joinder was entered on September 9, 1998.

In the meantime, Ditto filed a second motion for issuance of garnishee summons after judgment [hereinafter, second garnishee motion] on May 8, 1998, which is the subject of the instant appeal. Therein, Ditto specifically requested that she be permitted to execute her judgment against Pension Plan Nos. 1 and 2, which plans were both on deposit at Hawaiian Trust and had been previously declared not to be the property of the bankruptcy estate. Although recognizing that, pursuant to HRS § 651–124, pension monies are generally exempt from, *inter alia*, attachment, execution, or any legal process whatever, Ditto relied upon the exception to HRS § 651–124 to argue that:

> All contributions made to the plans within the three years prior to McCURDY's bankruptcy, or three years prior to the commencement of DITTO's civil litigation against him[,] cannot be exempted. McCURDY filed for bankruptcy on October 20, 1992. DITTO filed her Complaint in the instant action in 198[9] but filed her Medical Claims Conciliation Panel [ (MCCP) ] proceeding, as she was re-

quired to do, in December 1987.[2] Therefore, any and all contributions made to the subject plans (and interest accruing thereon), between December 1984 and December 1987, or between October 20, 1989 and October 20, 1992, are not exempt. DITTO contends that she is entitled to whichever amount is higher. . . .

Ditto also stated in her motion that, "after being served with the [first] garnishee summons, garnishee Hawaiian Trust disclosed it had assets of McCURDY, but did not disclose the value thereof, claiming that said assets were exempt." Accordingly, Ditto requested that the circuit court "order that garnishee Hawaiian Trust be held jointly and severally liable for all amounts owed by McCURDY to DITTO."

On May 27, 1998, McCurdy and Hawaiian Trust submitted a memorandum in opposition to Ditto's second garnishee motion, maintaining in pertinent part that:

> McCurdy's interest in the pension plans administered by Garnishee Hawaiian Trust are **exempt** from attachment and garnishment under federal law and state law which prohibit creditors from attaching or garnishing a person's interests in a pension account. The federal law is set forth in Section 206(d)(1) of [ERISA,] codified in 20 U.S.C. Section 1056(d)(1) and in Section 401(a)(13) of the Internal Revenue Code of the United States of America, codified in 26 United States Code Section 401(a)(13). Pursuant to the Supremacy Clause of the United States Constitution, set forth in Article VI of the United States Constitution, these federal laws are the supreme laws of the land concerning the protection of a debtor's interests in pension accounts.

(Underscored and bold emphases in original.) On May 27, 1998, Marivic, appearing pro se, also opposed Ditto's second garnishee motion, asserting simply that her rights "are superior to and prior to any right, title and claim of judgment creditor [Ditto] in [the Plans]."

Ditto's second garnishee motion came on for hearing on June 3, 1998. Because

---

**2.** According to the affidavit of Ditto's attorney, Ditto's MCCP proceeding was filed in December 1987, but the exact date is not known.

McCurdy did not request that any transcripts for the June 3, 1998 hearing be included in the record on appeal, the nature and substance of arguments made by the parties and/or considered by the circuit court at that hearing are unknown. It is apparent from the record, however, that, at the hearing, the circuit court did instruct Hawaiian Trust to submit materials reflecting contributions made to the Plans. On June 12, 1998, McCurdy and Hawaiian Trust submitted a post-hearing memorandum opposing Ditto's second garnishee motion. That same day, Hawaiian Trust also submitted a post-hearing affidavit, attaching, *inter alia*, an exhibit showing the amount of contributions made to McCurdy's Pension Plan No. 2 (the Transferred Defined Benefit Pension Plan) from January 1, 1986 through October 6, 1995. According to the exhibit, a total of $65,910.00 in contributions had been made to that account between April 9, 1986 and March 16, 1987.

On July 17, 1998, Ditto filed a response to the post-hearing memorandum of McCurdy and Hawaiian Trust, maintaining that "she is entitled to all contributions made to the [Plans] during either of the three year 'windows' provided for under H.R.S. § 651–124. . . ." The "windows" to which Ditto refers are the three years preceding McCurdy's bankruptcy (October 20, 1989 through October 20, 1992) and the three years preceding Ditto's civil action against McCurdy (December 1984 to December 1987). Additionally, Ditto requested that the circuit court grant her motion and award $65,910.00, but stated that she wished to reserve "her right to pursue additional portions of these pension plans as the material submitted by McCURDY do not make clear the amounts of all contributions made during both of the 'window' periods." With regard to the exhibits submitted by Hawaiian Trust, Ditto claimed that "the only materials expressly reflecting contributions[ ] . . . do not reflect contributions made before April 9, 1986." Ditto therefore requested that the court order McCurdy "to supplement his submissions of financial materials pertaining to the subject pension plans so that *all* contributions made to the pension plans between December 1984 and December 1987, and October 20, 1989 through October 20, 1992 be reflected." (Emphasis in original.)

On August 19, 1998, the circuit court issued its order granting in part and denying in part Ditto's second garnishee motion [hereinafter, second garnishee summons], stating in relevant part:

> The Court, having considered the arguments of counsel at the hearing and having reviewed the memoranda submitted by each party,
>
> IT IS HEREBY ORDERED, ADJUDGED AND DECREED, that said Motion is GRANTED in part and DENIED in part as follows:
>
> 1. The Motion is GRANTED as to $65,910.00 and the Court orders that a garnishee summons be issued to HAWAIIAN TRUST COMPANY, LTD. directing it to disclose and immediately deliver the amount of $65,910.00 to DITTO's attorneys; said amount is comprised of funds which were placed into McCURDY's pension plans during the period between December 1984 and December 1987. The Court finds that these contributions come within the statutory exemption for pension money set out in [HRS] § 651–124; and
>
> 2. All other relief requested in said Motion is DENIED without prejudice.

The circuit court, on September 22, 1998, issued its garnishee order [hereinafter, Garnishee Order], directing Hawaiian Trust "to pay immediately to [Ditto], care of her attorneys[ ] . . . the sum of $65,910.00[.]" Prior to the issuance of the Garnishee Order, McCurdy filed his notice of appeal from the second garnishee summons on August 31, 1998. The appeal was docketed as No. 21859. On September 1, 1998, McCurdy moved for a stay on appeal and for an interlocutory appeal which the circuit court orally denied on September 23, 1998. On October 14, 1998, McCurdy filed a notice of appeal from the court's September 23, 1998 order which was docketed as No. 21974. On October 21, 1998, McCurdy filed a notice of appeal from the Garnishee Order, which was docketed as No. 21990. As noted previously, by order dated November 27, 1998, we consolidated Nos.

21859, 21974, and 21990 under No. 21859 for the purposes of briefing and disposition.

## II. *STANDARD OF REVIEW*

■ The issue whether section 206(d) of ERISA prohibits garnishment of ERISA pension plan benefits, thereby preempting the exception to HRS § 651–124, is a question of law. "Questions of law are reviewable *de novo* under the right/wrong standard of review." *Best Place, Inc. v. Penn America Ins. Co.*, 82 Hawai'i 120, 123, 920 P.2d 334, 337 (1996) (citing *State v. Baranco*, 77 Hawai'i 351, 355, 884 P.2d 729, 733 (1994)).

## III. *DISCUSSION*

### A. *Appellate Jurisdiction*

■ As a preliminary matter, Ditto asserts that this court lacks jurisdiction to consider McCurdy's appeal, arguing that, "[b]ecause there still remained a question of how much was contributed to the plans during the three years preceding McCURDY's bankruptcy, the [second garnishee summons and Garnishee Order] are not final for the purposes of appeal." We disagree.

■ Generally, this court's jurisdiction over an appeal is limited to a review of final judgments, orders, and decrees. HRS § 641–1(a) (1993); *Ciesla v. Reddish*, 78 Hawai'i 18, 20, 889 P.2d 702, 704 (1995). "Judgment is not final in a case until all claims of the parties have been terminated." *Ciesla*, 78 Hawai'i at 20, 889 P.2d at 704 (citation omitted). It is well established, however, that this court has jurisdiction to consider appeals from judgments or orders which "require[ ] immediate execution of a command that property be delivered to the appellant's adversary, and the losing party would be subjected to irreparable injury if appellate review had to wait the final outcome of the litigation." *Id.* (citing *Penn v. Transp. Lease Hawaii, Ltd.*, 2 Haw.App. 272, 274, 630 P.2d 646, 649 (1981) (citing *Forgay v. Conrad*, 47 U.S. (6 How.) 201, 12 L.Ed. 404 (1848))). This rule, often referred to as the *Forgay* rule, "is an exception to the finality requirement for appeals[,] and it allows an appellant to immediately appeal a judgment [or order] for execution upon property, even if all

claims of the parties have not been finally resolved." *Ciesla*, 78 Hawai'i at 20, 889 P.2d at 704.

In the instant case, the Garnishee Order directs Hawaiian Trust, as garnishee, "to pay immediately to [Ditto], care of her attorneys[ ] ... the sum of $65,910.00[.]" The Garnishee Order further required Hawaiian Trust to "remit payment of said funds upon proper service of this Order." Inasmuch as the Garnishee Order effects, upon proper service (which was perfected on September 23, 1998), the immediate transfer of $65,910.00 from Hawaiian Trust to Ditto and, considering that McCurdy would clearly be subjected to irreparable injury if appellate review awaited the final outcome of the unresolved garnishment matters, we hold that the Garnishee Order is immediately appealable pursuant to the *Forgay* rule. Accordingly, we have jurisdiction to review the issues raised on appeal.

### B. *Preemption*

#### 1. *Federal Preemption Generally*

■ "[T]he historic police powers of the States [are] not to be superseded by ... Federal Act unless that [is] the clear and manifest purpose of Congress." *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516, 112 S.Ct. 2608, 2617, 120 L.Ed.2d 407 (1992) (quoting *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230, 67 S.Ct. 1146, 1152, 91 L.Ed. 1447 (1947)) (brackets in original). Indeed, the question of whether a certain state action is preempted by federal law is one of congressional intent. Accordingly, the purpose of Congress is the "ultimate touchstone." *Ingersoll–Rand Co. v. McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (quoting *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909–10, 85 L.Ed.2d 206 (1985) (quoting *Malone v. White Motor Corp.*, 435 U.S. 497, 504, 98 S.Ct. 1185, 1189–90, 55 L.Ed.2d 443 (1978))).

Congress's purpose may be stated explicitly in a statute's language or contained implicitly in the statute's structure and purpose. *Jones v. Rath Pack-*

*ing Co.*, 430 U.S. 519, 525 [97 S.Ct. 1305, 1309, 51 L.Ed.2d 604] (1977). For example, state law is preempted if it actually conflicts with federal law, even in the absence of an express congressional command. *Pacific Gas & Elec. Co. v. Energy Resources Conservation & Dev. Comm'n*, 461 U.S. 190, 204 [103 S.Ct. 1713, 1722, 75 L.Ed.2d 752] (1983). State law also is preempted if federal law "so thoroughly occupies a legislative field as to make reasonable the inference that Congress left no room for the States to supplement it." *Fidelity Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 153 [102 S.Ct. 3014, 3022, 73 L.Ed.2d 664] (1982) (quoting *Rice*, 331 U.S. at 230 [67 S.Ct. at 1152]). Both of these principles of preemption apply in the case of ERISA.

Marilyn Klinger & James P. Diwik, *ERISA Preemption and the Surety*, 29 Tort & Ins. L.J. 111, 112 (1993).

*Hawai'i Laborers' Trust Funds v. Maui Prince Hotel*, 81 Hawai'i 487, 492, 918 P.2d 1143, 1148 (1996) (some brackets in original) [hereinafter, *HLTF*].

### 2. *ERISA Preemption*

In 1974, Congress passed ERISA for the purpose of protecting the interests of participants and beneficiaries of qualified employee benefit plans [3] by, *inter alia*, "improving the equitable character and the soundness of such plans[.]" ERISA § 2(c), 29 U.S.C. § 1001(c). Briefly stated:

In enacting ERISA, Congress' primary concern was with the mismanagement of funds accumulated to finance employee benefits and the failure to pay employees benefits from accumulated funds. To that end, it established extensive reporting, disclosure, and fiduciary duty requirements to insure against the possibility that the employee's expectation of the benefit would be defeated through poor management by the plan administrator.

*Massachusetts v. Morash*, 490 U.S. 107, 115, 109 S.Ct. 1668, 104 L.Ed.2d 98 (1989) (citation omitted).

ERISA does not refer to "garnishment" per se. However, section 206(d)(1) of ERISA expressly states that "[e]ach pension plan shall provide that benefits provided under the plan may not be assigned or alienated." ERISA § 206(d)(1), 29 U.S.C. 1056(d)(1). This provision does not apply to "any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment." ERISA § 206(d)(2), 29 U.S.C. 1056(d)(2). A provision nearly identical to section 206(d)(1) is found in the companion tax provisions to ERISA in the Internal Revenue Code wherein assignment or alienation of benefits is also prohibited if a pension plan is to be qualified for special tax benefits under the statute.[4] *See* 26 U.S.C. § 401(a)(13) (1994). Additionally, ERISA's general preemption clause provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan[.]" ERISA § 514(a), 29 U.S.C. § 1144(a).

█ It is undisputed that Pension Plan Nos. 1 and 2 are both ERISA-qualified plans that contain anti-alienation provisions as re-

---

**3.** "Employee benefit plans" are defined as plans that are either an "employee welfare benefit plan," or "an employee pension benefit plan," or both. ERISA § 3(3); 29 U.S.C. § 1002(3).

**4.** Under ERISA, responsibility for administration and enforcement of the statute's substantive provisions is allocated between the Department of Labor and the Internal Revenue Service. The administration of the participation, vesting and funding standards is delegated to Labor and to IRS in the case of plans which seek tax qualification. In order to avoid duplication of effort, the statute delegated certain particular standards to one agency or the other. Since it was viewed as probable that almost all pension plans would seek tax qualification, however, the basic enforcement responsibility for participation, vesting and funding, was given to the IRS. House & Senate Conf.Comm., Conf. Rep. on H.R. 2, Pension Reform, H.R.Rep. No. 93–1280, 93d Cong., 2d Sess. 280 (1974), *reprinted in* [1974 U.S.C.C.A.N.] 4639, 5038; Statement of Hon. Harrison Williams, Jr., Chairman, Senate Committee on Labor and Public Welfare, Upon Introducing the Conference Report on H.R. 2, *reprinted in* [1974 U.S.C.C.A.N.] 5177, 5187–88.
*Commercial Mortgage Ins., Inc. v. Citizens Nat'l Bank of Dallas*, 526 F.Supp. 510, 512 n. 1 (N.D.Tex.1981).

quired by section 206(d)(1) of ERISA.[5]  Relying primarily upon *Guidry v. Sheet Metal Workers National Pension Fund*, 493 U.S. 365, 369, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990), and *General Motors Corp. v. Buha*, 623 F.2d 455 (6th Cir.1980), McCurdy argues that ERISA's prohibition against assignment and alienation "erects a general bar to the garnishment of pension benefits."  Insofar as the exception to HRS § 651–124 conflicts with ERISA, McCurdy maintains that the exception is preempted.  Based on *Guidry* and *General Motors*, we are compelled to agree.

We begin with *General Motors*, which is directly on point.  In that case, David Buha obtained a state court judgment against Walter Kinsky and his wife in a tort action.  When the judgment was not paid, Buha instituted post-judgment garnishment procedures, after which a writ of garnishment was served on the National Bank of Detroit in its capacity as trustee of a General Motors (GM) Corporation pension fund.  The trustee filed a disclosure indicating no liability to Kinsky, prompting Buha to demand an examination of the garnishee.  The matter was set for hearing before The Honorable James B. Stone, judge of the 34th judicial district of Michigan.

Prior to the hearing, however, GM filed suit in the United States District Court for the Eastern District of Michigan, seeking to restrain enforcement of the writ of garnishment.  The district court entered a temporary restraining order (TRO) pending the hearing on GM's motion for a preliminary injunction.  The district court reasoned that GM, as fiduciary of the pension plan, would "be irreparably damaged and harmed" unless defendants Buha and Judge Stone were immediately restrained.  Following the hearing on GM's motion for preliminary injunction, the district court entered an order perma-

nently enjoining Buha and Judge Stone from enforcing or attempting to enforce the writ of garnishment.

On appeal, the United States Court of Appeals for the Sixth Circuit held that benefits under an ERISA-qualified pension plan are not subject to garnishment by a creditor of a plan beneficiary.  The Sixth Circuit began its discussion by pointing out that

> [g]arnishment is not mentioned in ERISA.  However, both ERISA and the section of the [IRC] dealing with "qualified" pension, profit-sharing and stock bonus plans contain provisions against assignment or alienation of plan benefits.  Nearly identical language in 29 U.S.C. § 1056(d)(1) (ERISA) and 26 U.S.C. § 401(a)(13)(IRC) requires plans to contain a provision that "benefits provided under the plan may not be assigned or alienated."  The General Motors plan which was the object of the writ of garnishment contains this provision.  There is one exception in ERISA to the requirement of non-assignability which permits a "voluntary and revocable assignment of [sic] not to exceed 10 per cent of any benefit payment...."  29 U.S.C. § 1056(d)(2).  A similar exception is contained in 26 U.S.C. § 401(a)(13).

*General Motors*, 623 F.2d at 460.

The Sixth Circuit then reviewed the Joint House and Senate Conference Committee Report, which refers to the requirement of non-assignability and the exception as follows:

> *Alienation*
>
> Under the conference substitute, a plan must provide that benefits under the plan may not be assigned or alienated.  *Howeverer, the plan may provide that after a benefit is in pay status, there may be a voluntary revocable assignment (not to exceed 10 percent of any benefit payment) by an employee which is not for purposes of*

5.  With regard to the anti-alienation clauses contained in each plan, Section 12.01 of Pension Plan No. 1 provides that:

> Except as otherwise provided in Article XI regarding loans and below, the interest herein, whether vested or not, of any Participant, former Participant, or Beneficiary, shall not be subject to alienation, assignment, pledging, encumbrance, attachment, garnishment, execu-

tion, sequestration, or other legal or equitable process, or transferability by operation of law in the event of bankruptcy, insolvency, or otherwise.

In turn, Section 18.03 of Pension Plan No. 2 states in pertinent part that "a PARTICIPANT shall not have any right to assign, anticipate or transfer any assets held for his benefit, including amounts credited to his account."

*defraying the administrative costs of the plan. For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment.* Vested benefits may be used as collateral for reasonable loans from a plan, where the fiduciary requirements of the law are not violated. H.R.Rep. No. 93–1280, 93 Cong.2d Sess., *reprinted in* [1974 U.S.C.C.A.N.], pp. 4639, 5038, 5061.

*Id.* (emphasis added).

The court indicated that:

Both sides find support in this language. The plaintiff [(GM)] argues that "this rule" refers to the exception, and that since garnishments are not allowed within the 10 per cent exception, they are clearly not allowed above that amount. On the other hand, the defendants [(Buha and Stone)] see "this rule" as a reference to the general requirement of a provision against assignment or alienation. Under this reading a garnishment is not to be considered an assignment, and therefore is not prohibited.

*Id.* Nevertheless, the court concluded that neither of the parties' arguments was convincing and stated that it was "unable to decide the question on the basis of this portion of the legislative history." *Id.*

The court thereafter turned to defendants' argument that

use of the words "assignment" and "alienation" in [section] 1056(d)(1) indicates that Congress intended to prohibit only voluntary acts by the pension plan beneficiaries. They point out that Congress has clearly prohibited garnishments and attachments when that is its intention. They list ten different statutes in which Congress has made a distinction between voluntary assignments and involuntary encroachments on benefits by way of garnishment, execution, attachment, etc. *See, e.g.,* 5 U.S.C. § 8346 [Civil Service retirement benefits]; 10 U.S.C. § 1450 [benefits under serviceman's survivor benefits plan].

*Id.* (brackets in original). Although the Sixth Circuit agreed that "[t]his is a strong indication that Congress recognized the difference between voluntary and involuntary encroachments on benefit funds and has stat-

ed it specifically when both are forbidden[,]" the court stated that "Congress did use the word 'voluntary' in specifying those assignments which qualify for the 10 per cent exception in [section] 1056(d)(2)." *Id.* Accordingly, the court concluded that "[t]his can reasonably be read as an indication that the preceding language in [section] 1056(d)(1) included all encroachments, both voluntary and involuntary." *Id.*

The court then turned to an administrative interpretation of the anti-assignment provisions of ERISA, which it found highly persuasive:

Pursuant to [its authority under ERISA,] the Secretary of the Treasury issued Internal Revenue Service Regulation § 1.401(a)–13 [hereinafter, Treasury Regulation § 1.401(a)–13 or Reg. § 1.401(a)–13], which provides in part:

(b) *No assignment or alienation.* (1) *General rule.* Under section 401(a)(13), *a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be* anticipated, assigned (either at law or in equity), alienated or *subject to* attachment, *garnishment,* levy, execution or other legal or equitable process. 26 C.F.R. s 1.401(a)–13 (1979).

As Judge Garth pointed out in *Baker v. Otis Elevator Co.,* 609 F.2d 686, 690 (3d Cir.1979), *Congress specifically delegated to the Secretary of the Treasury the authority to issue regulations concerning participation, vesting and funding standards. Moreover, Congress provided that regulations issued by the Treasury Department would apply to analogous employee benefit sections of Title I of the Act in the same areas. Since the regulation in question is a legislative rather than an interpretive regulation, it is required to be followed unless it was issued in excess of the statutory authority of the Secretary or was "arbitrary, capricious, or an abuse of discretion, or otherwise not in accordance with law." Id.* at 691, *quoting Batterson [Batterton] v. Francis,* 432 U.S. 416, 426, 97 S.Ct. 2399, 2406, 53 L.Ed.2d 448 (1977).

*The regulation in question clearly passes this test.*

*General Motors,* 623 F.2d at 462–63 (some brackets in original) (emphases added). "Giving the required effect to Reg. § 1.401(a)–13," the Sixth Circuit concluded that "pension plan benefits are not subject to garnishment and that the district court properly enjoined the proceedings in the Michigan court." *See id.*

In *Guidry,* the United States Supreme Court recognized that ERISA "erects a general bar to the garnishment of pension benefits from plans covered by the Act." *Guidry,* 493 U.S. at 371, 110 S.Ct. 680. Therein, petitioner Curtis Guidry, a union official, pleaded guilty to embezzling more than $377,000 from respondent Sheet Metal Workers International Association, Local 9 (Union), in violation of section 501(c) of the Labor–Management Reporting and Disclosure Act of 1959 (LMRDA), 73 Stat. 536, 29 U.S.C. § 501(c) (1982 ed.). Guidry's employment with the Union had made him eligible to receive benefits from three union pension funds. Nevertheless, two of the pension plans determined that Guidry had forfeited his right to benefits as a result of his criminal activity. Guidry filed a complaint against the two plans in the United States District Court for the District of Colorado, alleging that the plans had wrongfully refused to pay him the benefits to which he was entitled.

The Union intervened, joined the third pension plan as a party, and stipulated to a $275,000 judgment in the Union's favor. The district court rejected the plans' claim that Guidry had forfeited his right to benefits, relying upon section 203(a) of ERISA, 29 U.S.C. § 1053(a) (1982 ed.), which declares that "[e]ach pension plan shall provide that an employee's right to his normal retirement benefit is nonforfeitable" so long as the employee meets the statutory age and years of service requirements. The district court concluded, however, that ERISA's anti-alienation clause did not preclude the imposition of a constructive trust in favor of the Union until the judgment was satisfied. Although the court appeared to acknowledge that the anti-alienation provision generally prohibited

the garnishment of pension benefits as a means of collecting a judgment, it nevertheless stated that "ERISA must be read in pari materia with other important federal labor legislation." *Guidry,* 493 U.S. at 370, 110 S.Ct. 680 (quoting *Guidry v. National Sheet Metal Workers' Nat'l Pension Fund,* 641 F.Supp. 360, 362 (D.Colo.1986)). Reading ERISA in pari materia with, *inter alia,* the LMRDA—which seeks to combat corruption on the part of union officials and to protect the interests of the membership—the district court concluded that a narrow exception to ERISA's prohibition on assignment or alienation of pension benefits arises where "the viability of a union and the members' pension plans was damaged by the knavery of a union official[.]" *Id.* The United States Court of Appeals for the Tenth Circuit affirmed, and the Supreme Court reversed.

The *Guidry* Court began its discussion by stating that:

> Both the District Court and the Court of Appeals presumed that § 206(d)(1) of ERISA erects a general bar to the garnishment of pension benefits from plans covered by the Act. This Court, also, indicated as much, although in dictum, in *Mackey v. Lanier Collection Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988). In *Mackey* the Court held that ERISA does *not* bar the garnishment of welfare (*e.g.,* vacation) benefits. In reaching that conclusion, it noted that § 206(d)(1) proscribes the assignment or alienation of *pension* plan benefits, but that no comparable provision applies to ERISA *welfare* benefit plans. *Id.* at 836, 108 S.Ct. 2182. It reasoned that "when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans." *Id.* at 837, 108 S.Ct. 2182 (emphasis in original). The view that the statutory restrictions on assignment or alienation of pension benefits apply to garnishment is consistent with applicable administrative

regulations,[6] with the relevant legislative history,[7] and with the views of other federal courts.[8] It is also consonant with other statutory provisions designed to safeguard retirement income.[9]

493 U.S. at 371, 110 S.Ct. 680 (emphases in original). Finding that it could "see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case[,]" the Court held that the constructive trust remedy "is therefore prohibited by § 206(d)(1) unless some exception to the general statutory ban is applicable." *Id.*

The Court went on to reject the plans' position that the LMRDA would be modified, impaired, or superseded by a "refusal to allow ERISA pension plans to be used to effectuate the remedial goals of the LMDRA."[10] 493 U.S. at 375, 110 S.Ct. 680. Additionally, the Court felt it inappropriate to "approve any generalized equitable exception—either for employee malfeasance or for criminal misconduct—to ERISA's prohibition on the assignment or alienation of pension benefits." *Id.* at 376, 110 S.Ct. 680. In

refusing to recognize a general equitable exception, the Court reasoned:

> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task.
>
> As a general matter, courts should be loath to announce equitable exceptions to legislative requirements or prohibitions that are unqualified by the statutory text. The creation of such exceptions, in our view, would be especially problematic in the context of an antigarnishment provision. Such a provision acts, by definition, to hinder the collection of a lawful debt. A restriction on garnishment therefore can be defended *only* on the view that the effectuation of certain broad social policies sometimes takes precedence over the desire to do equity between particular parties. It makes little sense to adopt such a policy and then to refuse enforcement

6. In a footnote, the Court stated:
   Treasury Department regulations state that for tax purposes "a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under the plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process." 26 CFR § 1.401(a)–13(b)(1) (1989).
   493 U.S. at 371 n. 10, 110 S.Ct. 680.

7. In a footnote, the Court stated:
   The anti-alienation provision permits "any voluntary and revocable assignment of not to exceed 10 percent of any benefit payment." ERISA § 206(d)(2), 29 U.S.C. § 1056(d)(2) (1982 ed.). The Conference Report states: "For purposes of this rule, a garnishment or levy is not to be considered a voluntary assignment." H.R. Conf. Rep. No. 93–1280, p. 280 (1974).
   493 U.S. at 371 n. 11, 110 S.Ct. 680.

8. In a footnote, the Court stated:
   See, e.g., *United Metal Products [Corp. v. National Bank of Detroit*, 811 F.2d 297 (6th Cir. 1987), *cert. dism'd*, 485 U.S. 1017, 108 S.Ct. 1494, 99 L.Ed.2d 883 (1988)]; *Ellis Nat'l Bank [of Jacksonville v. Irving Trust Co.*, 786 F.2d 466 (2d Cir.1986)]; *Tenneco Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688, 689–

690 (1983). Even courts that have recognized equitable exceptions to the bar on alienation have assumed that § 206(d)(1) operates, as a general matter, to proscribe garnishment of pension benefits. See *St. Paul Fire & Marine [Ins. Co. v. Cox*, 752 F.2d 550, 551–52 (11th Cir.1985)]; *Crawford [v. La Boucherie Bernard Ltd.*, 815 F.2d 117, 121–122 (D.C.Cir.), *cert. denied sub nom., Goldstein v. Crawford*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 355 (1987)].
   493 U.S. at 371 n. 12, 110 S.Ct. 680.

9. In a footnote, the Court pointed out that:
   The garnishment of retirement benefits is prohibited by the Social Security Act, 49 Stat. 620, as amended, 42 U.S.C. § 407 (1982 ed.); the Railroad Retirement Act, as amended, 47 Stat. 438, 45 U.S.C. § 231m(a) (1982 ed., Supp. V); the Civil Service Retirement Act, 5 U.S.C. § 8346(a); and the Veterans' Benefits Act, 38 U.S.C. § 3101(a) (1982 ed.).
   493 U.S. at 371 n. 13, 110 S.Ct. 680.

10. We note that LMRDA's remedial provisions provide, under certain conditions, for a private right of action "to recover damages or secure an accounting or other appropriate relief for the benefit of the labor organization." See 29 U.S.C. § 501(b) (1994).

whenever enforcement appears inequitable. A court attempting to carve out an exception that would not swallow the rule would be forced to determine whether application of the rule in particular circumstances would be "especially" inequitable. The impracticability of defining such a standard reinforces our conclusion that the identification of any exception should be left to Congress.

Understandably, there may be a natural distaste for the result we reach here. The statute, however, is clear. In addition, as has been noted above, the malefactor often is not the only beneficiary of the pension.

*Id.* at 376–77, 110 S.Ct. 680 (footnote omitted) (emphasis in original).

We are persuaded by the reasoning set forth in *General Motors* and *Guidry* and hold that section 206(d)(1) erects a general bar to the garnishment of pension benefits from ERISA-covered plans. Numerous federal and state courts are in accord. *See, e.g., Tenneco Inc. v. First Virginia Bank of Tidewater,* 698 F.2d 688, 689–90 (4th Cir.1983) (holding that, "[b]y virtue of the statute and . . . [Treasury Regulation § 1.401(a)–13], an employee's accrued benefits under . . . a qualified plan may not be reached by judicial process in aid of a third-party creditor"); *Travelers Ins. Cos. v. Fountain City Federal Credit Union,* 889 F.2d 264, 266 (11th Cir. 1989) (stating that "[b]oth the ERISA statute and the applicable [Treasury] regulation are clear[ ] . . . that pension plan funds may not be garnished"); *Commercial Mortgage Ins., Inc. v. Citizens Nat'l Bank of Dallas,* 526 F.Supp. 510, 516 (N.D.Tex.1981) (concluding that "ERISA's assignment-alienation prohibition creates a general federal exemption of pension benefits from commercial creditors' claims and preempts otherwise relevant state law"); *Cody v. Riecker,* 454 F.Supp. 22, 24 (E.D.N.Y.1978) (stating that ERISA's anti-alienation provision will not be construed "as permitting a garnishment or levy by every judgment creditor"); *Goddard v. Boozer,* 160 Ga.App. 303, 287 S.E.2d 308, 309 (1981) (holding that funds of a profit-sharing plan, which was an ERISA-qualified pension plan, were exempt from garnishment). *But see National Bank of North America v. International Bhd. of Elec. Workers, Local No. 3, Pension and Vacation Funds,* 69 A.D.2d 679, 688, 419 N.Y.S.2d 127 (N.Y.App.Div.1979) (holding that New York statutory procedures governing the enforcement of money judgments, including the mechanisms of levy and garnishment, are neither in conflict with nor preempted by the provisions of ERISA and, therefore, the vested benefits payable to a judgment debtor from an ERISA-qualified employee pension fund are not exempt). Moreover, our holding clearly comports with ERISA's goal of protecting the interests of participants and beneficiaries of qualified employee benefit plans. *See* ERISA § 2, 29 U.S.C. §§ 1001(b) and (c). Indeed, the legislative history of ERISA contains the following pertinent references to ERISA's anti-alienation provision:

[ (a) ] *Other provisions to protect covered employees and their beneficiaries.*—In addition to the minimum participation, vesting and funding standards provided in the bill, <u>your committee has adopted a number of specific provisions</u> **to protect the rights of employees and beneficiaries under qualified plans** . . . .

Qualified plans must provide that retirement benefits may not be assigned or alienated, except for voluntary and revocable assignments of not more than 10 percent of the benefits.

H.R.Rep. No. 93–807, 93rd Cong.2d Sess. 3, *reprinted in* 1974 U.S.Code Cong. & Admin. News 4670, 4695 (italics in original) (bold and underscored emphasis added); and

[ (b) ] *Alienation.*—**To further ensure that the employee's accrued benefits are actually available for retirement purposes,** the committee bill also contains a provision requiring the plan to provide that benefits may not be assigned or alienated. (Of course, this provision is not intended to prevent the transfer of benefit rights from one qualified plan to another.)

Nevertheless, a plan will be permitted to provide for voluntary and revocable assignments (not to exceed 10 percent of any benefit payment).

*Id.* at 4734 (italics in original) (bold and underscored emphasis added).

■ Ditto agrees that, pursuant to the Supreme Court's decision in *Mackey*, ERISA precludes the garnishment of pension benefit plans and not welfare plans. Ditto contends, however, that, because Pension Plan Nos. 1 and 2 are both welfare plans, garnishment was proper. We cannot agree.

ERISA defines an "employee welfare benefit plan" as

> any plan, fund, or program which ... is ... established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants and their beneficiaries, through the purchase of insurance or otherwise, ... medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services[ ]....

ERISA § 3(1), 29 U.S.C. § 1002(1).

An "employee pension benefit plan," on the other hand, is defined by ERISA as

> any plan, fund, or program which ... is ... established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a result of surrounding circumstances such plan, fund, or program—
>
> (A) provides retirement income to employees, or
>
> (B) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,
>
> regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

ERISA § 3(2), 29 U.S.C. § 1002(2).

Ditto points out that Pension Plan Nos. 1 and 2 both provide for benefits in the event of death or disability. Thus, "according to the very language of the [P]lans themselves," Ditto claims that "both constitute welfare benefit plans which the United States Su-preme Court in *Mackey* expressly held *are* subject to garnishment." (Emphasis in original.) Although Ditto fails to provide the court with any authority in support of her contentions, Ditto's argument is nevertheless wholly unpersuasive.

First, Pension Plan No. 1 clearly "results in a deferral of income by employees for periods extending to the termination of covered employment or beyond[.]" The stated purpose of Pension Plan No. 1 (McCurdy's Profit Sharing Plan) is "to promote [the Employer's] successful operation and the welfare of its Employees by enabling Employees to participate in the profits of the Employer and to provide for their economic security after their employment terminates[.]" (Underscore and bold emphasis added.) Accordingly, pursuant to Section 7.01, benefits under the plan are distributed to participants "[i]n the event of a Participant's retirement, disability, death, or other termination from Service[.]" In short, Pension Plan No. 1, by its express terms, defers payment of benefits until termination from service, whether termination occurs by "retirement, disability, death, or other termination from Service." As such, Pension Plan No. 1 falls within the definition contained in section 3(2) of ERISA.

Second, Pension Plan No. 2 (McCurdy's Transferred Defined Benefit Pension Plan) "provides retirement income to employees." Its express purpose is "to provide retirement benefits for the Employees of the Company[.]" To that end, the plan provides that "[a] PARTICIPANT shall be entitled to a normal retirement benefit consisting of an annual pension equal to 100% ... of final average earnings less 20% of the Primary Insurance Amount of Social Security reduced by 1⁄20 for each year of service less than 20 years[.]" Ditto is correct that Pension Plan No. 2 provides for the payment of benefits upon the death or disability of a participant. However, the fact that benefits can be paid out upon the death or disability of a participant is incidental to the plan; as indicated previously, it cannot be disputed that Pension Plan No. 2 was designed for the sole purpose of paying retirement income to its participants. Based on the foregoing, we hold that Pension Plan No. 2 also qualifies as

an employee benefit pension plan as defined in section 3(2) of ERISA.

 It is well established that, "[e]ven where Congress has not entirely displaced state regulation in a specific area, state law is preempted to the extent that it actually conflicts with federal law." *Pacific Gas & Elec. Co. v. Energy Resources Conservation & Dev. Comm'n,* 461 U.S. 190, 204, 103 S.Ct. 1713, 75 L.Ed.2d 752 (1983). "Such a conflict arises when compliance with both federal and state regulations is a physical impossibility, or where state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Id.* (citations and internal quotation marks omitted). Pursuant to the exception in HRS § 651–124, which otherwise allows for the garnishment of "contributions made to a plan or arrangement within the three years before the date a debtor files for bankruptcy, whether voluntary or involuntary, or within three years before the date a civil action is initiated against the debtor," the circuit court granted Ditto's second garnishee motion. Nevertheless, as discussed *supra,* ERISA erects a general bar to the garnishment of pension benefits from ERISA-covered plans ·and, therefore, prohibits the garnishment of Pension Plan Nos. 1 and 2. Insofar as compliance with both section 206(d)(1) of ERISA and the exception to HRS § 651–124 is "a physical impossibility," *Pacific Gas,* 461 U.S. at 204, 103 S.Ct. 1713, we hold that the exception to HRS § 651–124 is preempted to the extent that it actually conflicts with ERISA.[11]

## IV. *CONCLUSION*

Based on the foregoing, we reverse the circuit court's (1) August 19, 1998 order granting in part and denying in part plaintiff-appellee Janie Ditto's motion for issuance of garnishee summons after judgment and (2) September 22, 1998 garnishee order.[12]

---

**11.** As previously indicated, ERISA's broad preemption clause provides that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any [covered] employee benefit plan...." ERISA § 514(a), 29 U.S.C. § 1144(a). However, we need not reach the question whether HRS § 651–124 "relates" to an "employee benefit plan," and is therefore preempted under section 514(a). Insofar as we hold that ERISA creates a federal exemption for pension benefits, HRS § 651–126 is necessarily preempted to the extent that it conflicts therewith.

**12.** Insofar as McCurdy has failed to raise any argument with regard to the legitimacy of the circuit court's October 16, 1998 order denying Defendant's motion for stay on appeal and for interlocutory appeal, which was appealed as No. 21974, we hold that any issues with respect thereto were waived. Hawai'i Rules of Appellate Procedure Rule 28(b)(4) (1995).